### JACK EGBERT v. THE STATE.

#### No. 3515. Decided April 21, 1915.

#### Rehearing denied May 19, 1915.

**1.—Murder—Circumstantial Evidence—Charge of Court.**

Where, upon trial of murder, and a conviction of manslaughter, there was
direct evidence that defendant fired the fatal shot, there was no error in the
court's failure to charge on circumstantial evidence.

**2.—Same—Rule Stated.**

It has always been the rule in this State that if there is direct testimony
of the main fact to be proved, a charge on circumstantial evidence is not
required. Following Tooney v. State, 8 Texas Crim. App., 452, and other cases.

**3.—Same—Rule Stated—Circumstantial Evidence.**

Where an act has been testified to by direct evidence, a charge on cir-
cumstantial evidence is not required because the intent with which the act
was committed is sought to be established by circumstances. Following Flagg
v. State, 51 Texas Crim. Rep., 603, and other cases.

**4.—Same—Rule Stated—Juxtaposition.**

If the facts proven are in such close juxtaposition to the *factum probandum* as to be equivalent to direct testimony, a charge on circumstantial evidence is not required. Following Cabrera v. State, 56 Texas Crim. Rep., 141, and other cases.

**5.—Same—Case Stated—Circumstantial Evidence.**

Where, upon trial of murder, the evidence was positive that defendant fired the shot which killed the deceased, there was no error in the court's failure to charge on circumstantial evidence, although it may be that other testimony in the record would authorize the jury to disregard said positive testimony; besides, the circumstances bore out the fact that the shot was fired by the defendant, and was equivalent to positive testimony.

**6.—Same—Charge of Court—Negligent Homicide.**

Where, upon trial of murder, and a conviction of manslaughter, the defendant testified that the gun was loaded in a manner that he believed could not kill anyone, but inflict an injury, he was not entitled to a charge of acquittal, and the court having given a correct charge on negligent homicide, there was no reversible error.

**7.—Same—Negligent Homicide in Second Degree.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that defendant intended to fire the gun, and showed further that if he believed it would not kill, loaded as it was, yet knew it would inflict injury, he would be guilty of negligent homicide in the second degree, and the court having properly submitted this issue, there was no reversible error.

**8.—Same—Negligent Homicide of the First Degree.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that even though defendant may have been engaged in a lawful act, yet by negligence and carelessness killed the deceased, although he did not intend to shoot him or inflict any injury on him, yet he intentionally fired the gun, he was guilty of negligent homicide of the first degree, and the court having submitted this issue properly, there was no reversible error.

**9.—Same—Mistake—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, there was no question in the case of any accidental or unintentional shooting of the gun by which defendant killed the deceased, there was no error in refusing a charge on mistake and accident.

**10.—Same—Requested Charge.**

Where defendant's requested charge was fully covered by the court's main charge, there was no error in refusing same.

**11.—Same—Continuance—Manslaughter.**

Where, upon trial of murder, defendant was convicted of manslaughter, there was no error in overruling a motion for continuance for the alleged absent testimony bearing only on the issue of manslaughter.

Appeal from the District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Farrar & McRae,* for appellant.—On question of the court's failure

to charge on circumstantial evidence: Huddleston v. State, 70 Texas, Crim. Rep., 260, 156 S. W. Rep., 1168; Puryear v. State, 11 S. W. Rep., 929; Earley v. State, 50 Texas Crim. Rep., 344, 97 S. W. Rep., 82.

On question of court's failure to charge on accidental killing: Windham v. State, 173 S. W. Rep., 661; Thomas v. State, 54 Texas Crim. Rep., 377, 112 S. W. Rep., 1049; Mason v. State, 29 Texas Crim. App., 24; Pettit v. State, 28 id., 240.

On question of court's charge that if deceased was killed by another, etc.: Irvine v. State, 20 Texas Crim. App., 12; Meuly v. State, 26 id., 274; Porter v. State, 88 S. W. Rep., 359.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of court's failure to charge on circumstantial evidence: Branch's, Crim. Law, sec. 203, and cases cited in opinion.

HARPER, JUDGE.—Appellant was convicted of manslaughter and his punishment assessed at two years confinement in the penitentiary.

The evidence would show that appellant and Bob Craven were employed by Ellis County as guards of the county convicts. On the day of the homicide they were taking some thirty convicts from the county farm to the farm of Mr. Charles Davis. Mr. Craven was in advance of the convicts and appellant was in the rear of them. When near Davis' gin some five of the convicts made a break for liberty; shots were fired by both appellant and Craven, and one of the escaping convicts, Leslie DeWalt, was killed. The doctor who examined the body of the dead man says: "The cause of his (deceased) death was hemorrhage from a gunshot wound, as I saw it. I looked at his wounds; do not know how many there were, but they were in his back—I could not say how many there were. My best recollection is that there were eight or ten wounds. There was one right here (indicated) even down on his hips, there was one or two on his hips, as I remember, and there was one that just cut right across his shoulder here (indicated), and they were all over his back—scattered around over his back."

The first contention made by appellant is that the court erred in failing to charge on circumstantial evidence, and in failing to give his special charge presenting that issue. It has always been the rule in this State that if there is direct testimony of the main fact to be proved (in this case that appellant fired the shot that killed deceased), a charge on circumstantial evidence is not required. Tooney v. State, 8 Texas Crim. App., 452; Buntain v. State, 15 Texas Crim. App., 515; Hunnicut v. State, 18 Texas Crim. App., 498; Hayes v. State, 30 Texas Crim. App., 404; Bennett v. State, 32 Texas Crim. Rep., 216; Atkinson v. State, 34 Texas Crim. Rep., 424; Dobbs v. State, 51 Texas Crim. Rep., 629; Williams v. State, 58 Texas Crim. Rep., 82, 124 S. W. Rep., 954.

And where an act has been testified to by direct evidence a charge on circumstantial evidence is not required, because the intent with which the act was committed is sought to be established by circumstances.

Flagg v. State, 51 Texas Crim. Rep., 602; Roberts v. State, 44 Texas Crim. Rep., 267; Alexander v. State, 40 Texas Crim. Rep., 395; Russell v. State, 38 Texas Crim. Rep., 590; Williams v. State, 58 Texas Crim. Rep., 82, 124 S. W. Rep., 954.

Again, if the facts proven are in such close juxtaposition to the factum probandum as to be equivalent to direct testimony, a charge on circumstantial evidence is not required. Cabrera v. State, 56 Texas Crim. Rep., 141; Smith v. State, 90 S. W. Rep., 638; Holland v. State, 45 Texas Crim. Rep., 172; Adams v. State, 34 Texas Crim. Rep., 470; Holt v. State, 9 Texas Crim. App., 571; Montgomery v. State, 55 Texas Crim. Rep., 304; Wheeler v. State, 15 Texas Crim. App., 607.

We have cited these general propositions of law (which have always prevailed in this State), and will now apply them to the evidence in this case.

E. A. Talbert, one of the convicts, testified that deceased and he were "chums or partners"; that they had been sent to the county farm for unlawfully riding trains. That in going from the county farm to the Davis farm that he and deceased were about the center of the convicts. That the convicts who attempted to escape threw their cotton sacks towards the rear and ran; that they ran up near the gin, and when they got about the middle of the seed house the shot was fired, and he saw DeWalt fall; *that Capt. Jack* (appellant) *fired that shot.*

Appellant's able counsel ingeniously argue that this is shown to be but an opinion of the witness, taking into consideration his position, etc., but we take it that it is positive testimony that appellant fired the shot that killed deceased. It may be that other testimony in the record would authorize the jury to disregard it (but apparently they did not do so), but we are only discussing at this time whether or not the court committed error in failing to charge on circumstantial evidence, and in our opinion, with this evidence in the record, no such charge was called for or required. Again, the testimony of all the witnesses show that appellant was in the rear of the convicts, that Craven was in front of the convicts, and these two men alone fired shots on that occasion; that deceased was shot in the back, and it would be difficult for a man in front to have fired the shot that hit DeWalt in the back, when he was in front of him. The testimony showing that appellant was in the rear, Craven in front, and the shot struck the deceased in the back, both shooting, the facts would be about equivalent to positive testimony that appellant fired the shot that killed deceased, if the testimony of Talbert was not in the record, and under the authorities above quoted this assignment presents no error.

The next proposition insisted on by appellant is that while appellant testified that he fired a shot, he did not intend to kill anyone, and he did not know whether or not he hit anyone or not; that he did not know whether or not he shot DeWalt or Craven shot him. He also testified that he thought the gun was loaded with No. 4 shot and not buckshot, and the court should have instructed the jury:

"You are further instructed that our law provides that if a person laboring under a mistake as to a particular fact shall do an act which would be otherwise criminal, he is guilty of no offense; such mistake being such that the person so acting under the mistake would have been excusable had his conjecture as to the fact been correct, and the mistake did not arise from a want of proper care on the part of the person committing the offense.

"Therefore, if you should believe from the evidence beyond a reasonable doubt that the defendant fired the shot that killed Leslie DeWalt, and that the death of said DeWalt was caused by his gun being loaded with shot larger than No. 4, and his death would not have been a probable consequence had he been shot under the circumstances had said gun been loaded with No. 4 shot. And if you further believe that the defendant believed his gun was loaded with No. 4 shot and its being loaded with larger shot than No. 4 shot was a mistake as to him; and such mistake did not arise from a want of proper care on his part; and that laboring under such mistake the defendant fired his gun with no specific intent to hit anyone, or only to alarm the prisoners who were escaping, if such was the case, and he did so fire his gun and under such circumstances killed Leslie DeWalt, then such killing would be excused on account of such mistake of fact, and you will acquit the defendant, and if you have a reasonable doubt of defendant's guilt hereunder you will give him the benefit of such doubt and acquit him."

The question arises if appellant's gun had in fact been loaded with No. 4 shot, and such shot in the gun he was using would not have killed deceased at the distance he was from appellant, yet the shot struck deceased, would appellant be guilty of any character of offense, even though in firing the shot he had no intent to kill? If he would have been guilty of any character of offense, the court properly refused the charge. If, as a matter of law, one shoots a gun, with no intent to kill, loaded in a manner he did not believe he could kill, yet also knowing that it was loaded with a character of shot that would inflict injury, would he be entitled to be acquitted of any and all character of offenses? We do not think so, and the court, we think, properly held that under such circumstances he would be guilty of negligent homicide, and submitted that issue to the jury, in a charge in which there is no room for complaint. Our Code provides:

"Article 683. Homicide by negligence is of two kinds: 1. Such as happens in the performance of a lawful act, and, 2, that which occurs in the performance of an unlawful act.

"Article 684. If any person in the performance of a lawful act shall, by negligence and carelessness, cause the death of another, he is guilty of negligent homicide of the first degree.

"Article 685. A 'lawful act' is one not forbidden by the penal law, and which would give no just occasion for a civil action.

"Article 686. To constitute this offense there must be an apparent danger of causing the death of the person killed, or some other.

"Article 687. The want of proper care and caution distinguishes this offense from excusable homicide. The degree of care and caution is such as a man of ordinary prudence would use under like circumstances.

"Article 688. Throwing timbers by a workman from the roof or upper part of a house in a public street or highway, or where a number of persons are known to be around the house; or discharging firearms on or near a public highway, other than a street in a town or city, in such manner as would be likely to injure persons who might be passing, are examples of negligent homicide of the first degree, in case of death resulting therefrom. If death is caused by the careless discharge of firearms in a public street of a town or city the offense will be of a higher degree.

"Article 689. To bring the offense within the definition of homicide by negligence, either of the first or second degree, there must be no apparent intention to kill.

"Article 692. The definitions, rules and provisions of the preceding articles of this chapter, with respect to negligent homicide of the first degree, apply also to the offense of negligent homicide of the second degree, or such as is committed in the prosecution of an unlawful act, except when contrary to the following provisions:

"Article 693. Negligent homicide of the second degree can only be committed when the person guilty thereof is in the act of committing or attempting the commission of an unlawful act.

"Article 694. Within the meaning of an 'unlawful act' as used in this chapter are included: 1. Such acts as by the penal law are called misdemeanors; and, 2, such acts, not being penal offenses, as would give just occasion for a civil action."

Negligent homicide, it is thus seen, is a killing which can only be predicated upon facts showing no intention to kill. Appellant swears he had no intention to kill, and there is testimony in the record that if the gun had been loaded with No. 4 soft shot it might not have killed the distance the two were apart. It has been said that negligent homicide of the second degree is a homicide which occurs in the performance of an unlawful act when the unlawful act does not arise above the grade of a misdemeanor, and where the evidence would warrant the jury in concluding that in the performance of the act there was no apparent intention to kill. Robbins v. State, 9 Texas Crim. App., 666; McConnell v. State, 13 Texas Crim. App., 390, and 22 Texas Crim. App., 354. This case shows appellant intended to fire the gun, and shows further, that if he believed it would not kill, loaded as it was, yet he knew it would inflict injury, and if he intentionally shot at deceased with such a weapon under such circumstances, he would be guilty of a misdemeanor if he had not killed, and as he did kill, he would be guilty of negligent homicide in the second degree.

On the other hand, if he did not intend to shoot at deceased, and did not intend to inflict any injury on him, yet he intentionally fired

the gun (as all the testimony shows he did) our statute provides that the discharge of firearms on or near a public highway in such a manner as would likely injure persons who might be passing, and death resulted therefrom, is negligent homicide of the first degree; and further, that even though one be engaged in a lawful act, yet by negligence and carelessness cause the death of another, he is guilty of negligent homicide of the first degree.

There is no question in the case of any accidental or unintentional shooting the gun. The testimony of appellant, and all the testimony, shows that he intentionally fired the shot. As to his intent in shooting it, is a question under the evidence, but the question of whether he intended to kill the deceased is not an issue in negligent homicide of the first degree. If he intentionally shot the gun, and by negligence and carelessness had it pointed at the deceased, when he fired it, the shot hitting and killing deceased, he would be guilty. Appellant apparently has not taken into consideration the fact that negligent homicide is based wholly upon the theory that the evidence must show there was no intent to kill by an act intentionally done. Accidental homicide arises only when *the act* which caused the death was unintentionally done. There is nothing in this record to raise the issue that appellant did not intend to shoot, therefore the court did not err in refusing the special instruction to acquit under the facts stated in the special charge, because appellant would not be entitled to an acquittal under such state of facts. The county convicts were fleeing in front of him; he intentionally shot his gun, and killed one of them. Either by negligence in holding his gun, in having it pointed at the convicts at the time, or by intention, the shot struck DeWalt, and under either of such circumstances the special charge requested was not the law of the case.

As the court gave appellant's special charge No. 8 it was not necessary to give charge No. 2. Charge No. 8 reads: "Gentlemen of the Jury: You are further instructed in connection with my main charge that if you have a reasonable doubt from all the testimony before you as to whether the shot that killed Leslie DeWalt, if you believe beyond a reasonable doubt that he was shot and killed, was fired by Bob Cravens, and not by the defendant, Jack Egbert, it is your duty to resolve such doubt in favor of the defendant and acquit him in this case." This charge fully covered that phase of the defensive testimony.

As appellant was found guilty of manslaughter only, the lowest penalty being assessed, there could be no error in overruling the motion for a continuance. The absent testimony could and would bear only on the issue of manslaughter.

We readily agree with the contentions of appellant that if a case rests wholly upon circumstantial evidence, the court must so instruct the jury; that it is the duty of the court to submit in his charge every issue raised by the testimony, and that the defendant is entitled to have affirmatively submitted matters of defense, but we are of the opinion that the court did in his main charge, and the charges given at the

request of appellant, submit every issue raised by the testimony, and submit affirmatively the defensive issues; and we are further of the opinion that there is direct testimony in the record that appellant fired the fatal shot, and, therefore, no charge on circumstantial evidence was called for.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied May 19, 1915.—Reporter.]