**James Dennis STOUT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43279.**

Court of Criminal Appeals of Texas.

Dec. 16, 1970.

---

1. A witness, of course, has no control over a case and may be required to testify against his wishes.

Jouette M. Bonner, Jacksboro, for appellant.

Patrick A. Myers, County Atty., Jacksboro, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is negligent homicide in the second degree; the punishment, three years in the county jail.

In grounds of error #4, 5, 7 and 11 the appellant complains that neither the complaint nor the information contains the phrases "homicide" or "homicide of the first degree" or "homicide of the second degree." These contentions were raised for the first time on the motion for new trial. It appears to be appellant's position that despite the sufficiency otherwise of the statements and allegations in such instruments they are defective since nowhere is the phrase "negligent homicide in the second degree" utilized.

The information was based upon the complaint, and the information is substantially in compliance with the suggested forms set out in 4 Branch's Ann.P.C., 2d ed., Secs. 2164 and 2164.1 (second paragraphs charging an unlawful act).

The information alleged facts which constituted negligent homicide in the second degree.[1]

1. Omitting the formal parts, the information reads as follows:
"* * * that on or about the 22nd day of October, A.D. 1967, and before the making and filing of this information, in the County of Jack and the State of Texas, one James Dennis Stout was then and there engaged in the performance of an unlawful act, to wit, making a turn so as to proceed in the opposite direction where sight restriction is such that the section of highway being traversed lies within a no-passing zone as determined and marked, by driving and operating a motor vehicle, to wit, an automobile, on a public street and highway, there situate and making a U-turn in a no-passing zone which was plainly to said defendant, said no-passing zone having been placed upon said street and highway, upon which the said defendant was

We deem the same sufficient to apprise the appellant of the charge against which he had to defend.

To uphold the appellant's contention would mean that every information or indictment would be defective simply because somewhere in the body thereof there is not contained a shorthand name or rendition of the offense alleged such as "misdemeanor theft," "felony theft," "felony theft by false pretext," etc. We do not agree.

In grounds of error #1, 2, 3, 6, 8, 9, 10, 12, 13, and 14 appellant challenges the sufficiency of the evidence to sustain the conviction.

The evidence is before us by virtue of an agreed statement of facts as authorized by Article 40.09, Sec. 14, Vernon's Ann.C.C.P.

Air Force Sgt. C. L. Jones testified that about 4 p. m. on October 22, 1967, he was traveling northwest on U.S. Highway No. 281—State Highway 199 from Jacksboro toward Wichita Falls with the weather fair and the highway dry. Just outside of the city of Jacksboro he witnessed an automobile accident in which an automobile (shown by agreement to have been driven by the deceased William Larry Pool) ran into a dry creek bed, overturned and landed on the left front side. He related the Pool automobile, traveling in the same direction as he was, was forced off the left hand side of the side of the highway by a light colored or white Chevrolet automobile (shown later to have been driven by the appellant) which

was making a U-turn in order to proceed back toward Jacksboro; that if the Pool automobile had continued in the right hand lane it would have hit the appellant's car broadside; that the Pool car passed in front of the path of the white Chevrolet by approximately 8 to 15 feet before leaving the highway and plunging into the creek bed.

Mrs. Mildred Allen testified she was traveling in the second automobile behind the Pool car and observed a light colored Chevrolet pull across the highway in front of the Pool car, which then pulled to the left and ran off the pavement and into the creek bed; that the light colored Chevrolet pulled across the highway and stopped on the right hand side of the road facing towards Jacksboro and in doing so such Chevrolet had to cross a yellow highway stripe; that she pointed out appellant's Chevrolet to Highway Patrolman Priest.

Mrs. Gordon Parks related she, Mrs. Bill McLean and two other ladies were enroute from Amarillo to Cleburne on the date in question; that as they approached Jacksboro from the northwest on U.S. Highway No. 281 she saw a light colored Chevrolet turn across the highway in the path of an automobile coming from the direction of Jacksboro; that the approaching automobile swerved to the left to avoid a collision and ran into a creek bed; that the light colored automobile then pulled across the highway and stopped facing toward Jacksboro.

Mrs. McLean corroborated such testimony and related they rendered aid to the

then and there driving by the proper authorities of the State of Texas, and said defendant, while engaged in said unlawful act, and as a result of said unlawful act, by negligence and carelessness caused the death of William Larry Pool by causing the said automobile which he was operating to force another automobile off the said street and highway and causing said other automobile in which said automobile the said William Larry Pool was then and there an occupant to overturn, thereby mangling, brusing, crushing and causing injuries to, the body of the said William Larry Pool, from which injuries the said William Larry Pool died, and

the death of the said William Larry Pool was the consequences of the said act of negligence so done by the said defendant, there being then and there no apparent intention to kill, but there was then and there an apparent danger of causing the death of the said William Larry Pool, or other persons on said street and highway, which fact would have been known to the said defendant if he had used that degree of care and caution which a person of ordinary prudence would have used under like circumstances and which degree of care and caution he did then and there fail to use, against the peace and dignity of the State."

occupants of the car in the creek; that the man removed from the driver's seat was dead.

Patrolman Lowell Priest arrived on the scene shortly after the accident and took the license number of the light colored Chevrolet pointed out to him. He revealed that William Larry Pool was dead when he was removed from the car in the creek. He then discovered the light colored Chevrolet had left the scene of the accident. Such car was stopped in Mineral Wells and Priest proceeded there where he witnessed a statement given by the appellant who was the driver of such car.

Priest testified that at the point where appellant's automobile pulled across the highway there was a no passing zone for vehicles traveling toward Jacksboro as indicated by a yellow stripe. There was no corresponding yellow stripe or no passing zone on the opposite of such public highway located in Jack County for vehicles traveling towards Wichita Falls.

Appellant's written statement was introduced into evidence after it was shown he was duly warned, etc.

Appellant admitted he was driving west on U.S. Highway 281 when he pulled over on the shoulder of the right hand side of the road and cut his wheels to the left, and may have cut his front wheels far enough to make Pool think he was entering the highway. He acknowledged he had purchased a case of beer in Mineral Wells prior to the accident.

Justice of the Peace Tom King acted as coroner and testified he declared the deceased dead at the scene of the accident. The death certificate was introduced and reflected the cause of death was a broken neck due to an automobile accident.

Mrs. Virginia Pool testified she and her husband, the deceased, were traveling to Plainview at the time of the accident; that the deceased was driving and she had turned around facing the back seat and did not see appellant's car. She revealed that her hus-

band was 26 years old, was alive and healthy at the time.

M. M. Hartis, a defense witness, testified he and the appellant had decided to take Jesus Rodrigas to Dickens, Texas; that when they reached the scene of the accident they decided to turn around and return to Jacksboro because they were not sure they were on the right road; that they pulled off the highway and started to turn when he saw the Pool automobile approaching at a high rate of speed; that Pool could have passed without getting out of the right hand lane as the appellant, who was driving, stopped before he pulled out onto the road. He acknowledged the purchase of a case of beer but stated appellant had only one beer, and had not had any whiskey. Hartis claimed he had placed the whiskey bottle (which was apparently discovered) in the appellant's car a few nights earlier without his knowledge.

R. L. Stalcup, an employee of the Texas Highway Department for 10 years at its Jacksboro location, testified he was familiar with the scene of the accident one mile west of Jacksboro and there had never been a "No passing" or "No turning" sign erected at the scene of the accident and there was no need for one; that the area was level and the view clear 800 feet east of the creek. He related that at the time of accident there was a yellow stripe on the right hand side when approaching Jacksboro from the northwest.

John W. Simpson, resident engineer for Jack County and an employee of the State Highway Department, corroborated Stalcup's testimony. He testified it was his responsibility to place markings upon the Jack County highways and the yellow stripe in question was placed upon the highway under order and direction because the highway curves to the left southeast of the creek into which the Pool car crashed.

Article 1239, Vernon's Ann.P.C., provides:

"Negligent homicide of the second degree can only be committed when the

person guilty thereof is in the act of committing or attempting the commission of an unlawful act."

Article 1240, V.A.P.C., reads:

"Within the meaning of an 'unlawful act' as used in this chapter are included:

"1. Such acts as by the penal law are called misdemeanors; and

"2. Such acts, not being penal offenses, as would give just occasion for a civil action."

Article 1242, V.A.P.C., provides:

"When the unlawful act attempted or executed is known as a misdemeanor, the punishment of negligent homicide committed in the execution of such unlawful act shall be imprisonment in jail not exceeding three years, or by fine not exceeding three thousand dollars."

Article 6701d, Sec. 58, Vernon's Ann. Tex.Civ.St., provides:

"The State Highway Commission is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones and when such signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions thereof."

Sec. 66 of said statute provides:

"No driver of a vehicle shall turn so as to proceed in the opposite direction where sight restriction is such that the section of highway being traversed lies within a no-passing zone as determined and marked in accordance with the provisions of Section 58."

Section 143 of said statute provides that violation of any of the provisions of the statute are misdemeanors unless expressly declared by law to be a felony.

The court submitted the case to the jury under the first mode of Article 1240, supra, instructing the jurors that the homicide must be the consequence of the unlawful act done or attempted to be done; that there must be apparent danger of causing the death of the person killed or some other and that there must be no apparent intention to kill.

Viewed in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to sustain the conviction for negligent homicide in the second degree. "Where the death is a result of a misdemeanor violation of the motor vehicle laws, a conviction of second degree negligent homicide may be proper." 29 Tex.Jur. 2d, Homicide, Sec. 101, p. 112. And contributory negligence on the part of the deceased is not a defense to a prosecution for negligent homicide. See 29 Tex.Jur.2d, Homicide, Sec. 98, p. 108.

The absence of evidence to sustain the allegation of the information that Pool's body was "mangled" and "crushed" does not constitute a fatal variance. Such allegations may be treated as surplusage. Hilty v. State, 120 Tex.Cr.R. 304, 49 S.W.2d 786; Bullock v. State, 171 Tex.Cr.R. 347, 350 S.W.2d 24. We find no merit in appellant's claim that the evidence is insufficient since the yellow stripe in question did not extend "as far west as the scene of the accident," apparently referring to the point at which the Pool car left the highway and plunged into the creek bed.

The judgment is affirmed.