Felipe Segura PALAFOX, Appellant,

v.

The STATE of Texas, Appellee.

No. 44980.

Court of Criminal Appeals of Texas.

July 19, 1972.

Rehearing Denied Oct. 11, 1972.

---

5. See State v. Witherspoon, 460 S.W.2d 281 (Mo.1970).

Moises Vincente Vela, Harlingen, for appellant.

F. T. Graham, Dist. Atty., Menton Murray, Jr., Asst. Dist. Atty., Brownsville, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for murder where the punishment was assessed by the court at 20 years following the jury's verdict of guilty.

The record reflects that the deceased, Elvira Rivera, was killed when struck by an automobile driven by the appellant.

Initially, appellant contends the court erred in overruling his motion for an instructed verdict because the evidence was insufficient to show an intent to kill, an essential element of the offense of murder.

The tragic sequence of events occurred at the Civic Center parking lot in Brownsville following a wedding reception dance on September 25, 1970.

The dance had been attended by many people, including the deceased and her husband, Anacario Rivera, Aniceto Saldivar and his wife, and Jose Luis Escobedo and his fiancee, Rosario Rios, a niece of the appellant's wife. The appellant and his wife, Maria Elena, were also there.

Rosario Rios revealed that at the dance she and Escobedo had an argument because of the way he was dancing and because he was acting "silly." Escobedo had been drinking beer, as well as apparently many of the others who were there.

At the conclusion of the dance, near midnight, and as these individuals were leaving the building, it appears that Escobedo inquired of the appellant why he had come to the dance when he had earlier said he would not. As the conversation developed, appellant reprimanded Escobedo for his neglect of Rosario Rios during the dance. Shortly thereafter, a fight erupted between the two. Upon the screams of the women, Rivera and Saldivar separated the pair. As the fight ended, the parties all moved to the parking lot.

Rivera and Saldivar and their wives then proceeded to the Rivera car. Escobedo walked with his arm around the appellant's neck towards appellant's Thunderbird automobile. There, the argument continued although there was some dispute about whether additional blows were struck. During the continued dispute, Rivera moved his car closer to the appellant's car to see what was happening. Rivera revealed the appellant and Escobedo were continuing to fight, and that the appellant made a motion and yelled something to him (Rivera). At this point, Rivera got out of his car and joined Escobedo at the door of appellant's car where appellant commenced to argue with Rivera. Although there was some dispute, some State witnesses indicated that Rivera pulled at the appellant's shirt.

While this was taking place, the deceased, Elvira Rivera, got out of the car in which she had been seated and advanced some distance toward appellant's car.

When appellant's car "jerked" backwards for a short distance, Rivera, Escobedo and Miss Rios moved away and close to the concrete median in the parking lot. At this point, appellant's car engine was "gunned," tires squealed, and the car accelerated forward, jumping the median which was 4″ high and 3′ across, hitting both Escobedo and Rivera and knocking them down. The car then turned left sharply, and continued approximately twenty feet or more before striking Elvira Rivera and passing over her body. The impact caused her death.

Brownsville City Patrolman Ortiz testified he was answering a disturbance call at the Civic Center and observed the incident in which the deceased was struck; that he gave chase, blowing his horn for appellant to stop, and the appellant stopped only after he pointed a pistol at the appellant. He testified that in his opinion the appellant was not intoxicated.

Ortiz testified that the brake lights of appellant's car did not come on until the final stop.

The Saldivars also testified they never observed any brake lights or any other action which might indicate the appellant was trying to stop.

Detective Tapia testified that his investigation revealed the lighting in the parking lot was sufficient to provide visibility up to 100 feet on the night in question; that he found no skid or black marks on the lot; that, upon examination at the police station, the brakes and brake lights of appellant's vehicle were operative, and he found no malfunction in his inspection of the Thunderbird automobile.

When asked if she heard the appellant say anything to Rivera when he was at the appellant's car, Rosario Rios stated, "I only heard him say that they were going to pay for it because they had hit him."

Sgt. Anduiza of the Brownsville Police, who was on the scene, testified he saw a man "swinging" at the driver of the orange Thunderbird and that the car backed up and started forward and went over the median.

The record also reflects he testified:

"A Yes, it seemed to me, at the time, that this car went after those people that started running away.

" . . . .

"Q Then what happened?

"A He was following these people, going after them until I saw those four people that I distinctly remember. One was a clumsy woman running in front of the car. She was running clumsy—"

Testifying in his own behalf, the appellant testified that after he and Escobedo commenced the original fight, "a bunch of guys" began hitting him, and that after he reached his car and started the motor, Escobedo thrust his body partially through the window and withdrew only when a police car passed by. He denied he yelled or motioned to Rivera so as to cause him to come to the car. He related that his car was already in reverse when Rivera began grabbing and striking him, and his wife tried to get Rivera's hands off of him. Then, appellant testified:

" . . . I had moved to the right and I had my foot on the pedal, the gas line pedal, and I think that is *when it accidentally*—on that moment is when I moved the lever from reverse to drive or low or whatever it is and then the car hit this levee here on top of here and then he got out quickly, instantly. Everything happened so instant [sic], so quickly, *I couldn't understand it.* That is all I remember from then on." (Emphasis added.)

On cross examination, he stated he "didn't realize that" the car had started forward until he had crossed the median. He acknowledged he could see out the windshield and managed to turn the car after it crossed the median. He was then asked:

"Q You never did look out to look and see what was in front of your car?

"A Everything was so instantly, that it happened instantly, so quickly."

Appellant denied intending to hit or kill Elvira Rivera, or Rivera or Escobedo. He claimed he stopped when his wife told him he hit someone, not because of Officer Ortiz.

Appellant's wife, who was in the car with him, corroborated much of his story. On cross examination, she revealed the deceased was visible to her prior to the impact; that, at the time, her husband was in the driver's seat looking straight ahead.

The judge charged the jury on murder with and without malice as well as the defense of accident. The court also instructed the jury that it must find the appellant intended to kill the deceased, or that he intended to kill some other person, and, as a result, killed Elvira Rivera by accident, or mistake. See Article 42, Vernon's Ann.P.C.

■ Appellant contends there is little or no evidence that he intended to kill Elvira Rivera. The State does not contend otherwise, but urges its theory that he intended to kill Rivera and Escobedo and killed Mrs. Rivera by accident or mistake in such attempt. The State calls attention to the court's charge authorizing conviction under the provisions of Article 42, supra.

In 4 Branch's Ann.P.C.2d ed. § 2077, p. 385, it is written:

"... A person is chargeable with the intent with which he acted and the intended consequences of his act. If he shoots at one person with malice and kills a bystander or third person, he is guilty of murder with malice. ..."

. . . . ."

See also, 16 Tex.Jur.2d Criminal Law § 43.

In Walker v. State, 440 S.W.2d 653, 657 (Tex.Cr.App.1969), wherein it was claimed the evidence failed to establish an intent to kill, the court said:

"Article 45, V.A.P.C., provides 'The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act.' " 'The intent of the defendant may always be ascertained or inferred from the means used and the wounds inflicted by him.'

4 Branch's Anno.P.C., 2d ed., Sec. 2190, pp. 535–536.

"Further, the trier of the facts may infer intent to kill from any facts in evidence which to his mind prove existence of such intent to kill, as from use of a deadly weapon. Hall v. State, Tex.Cr. App., 418 S.W.2d 810. See also Sadler v. State, Tex.Cr.App., 364 S.W.2d 234 (intent to kill is either presumed or established by facts in murder prosecution).

" 'It is well settled that when the weapon used in effecting an unlawful killing is a deadly weapon, per se, the intent to kill is presumed as a matter of law.' Baylor v. State, 151 Tex.Cr.R. 365, 208 S.W.2d 558. See also 20 Texas Digest, Homicide, ☞145."

■ While an automobile has been held not to be a deadly weapon, per se, so that intent to kill may be presumed, Brewer v. State, 140 Tex.Cr.R. 9, 143 S.W.2d 599, 602 (1940), such intent may be shown from all the circumstances surrounding the killing. See, Brewer v. State, supra, note 3; Cockrell v. State, 135 Tex.Cr.R. 218, 117 S.W.2d 1105 (1938); Cooper v. State, 171 Tex.Cr.R. 412, 351 S.W.2d 235 (1961); Lopez v. State, 162 Tex.Cr.R. 454, 286 S. W.2d 424 (1956); Johnson v. State, 153 Tex.Cr.R. 59, 216 S.W.2d 573 (1948).[1]

Considering all the evidence in the light most favorable to the jury's verdict, we find the evidence sufficient to show an intent to kill either Escobedo or Rivera, or both, at the time of the act which resulted in the death of Elvira Rivera.

■ Next, appellant contends the trial court erred in refusing to submit his special requested charges on both first and second degree negligent homicide.[2]

---

1. For similar cases in other jurisdictions, see, Annot., Murder, Homicide by Automobile, 21 A.L.R.3d 116, pp. 145–50 (1968). Cases of murder either with or without malice where the instrumentality was an automobile should be distinguished from those cases arising under Article 802c, Vernon's Ann.P.C.

2. The basic elements of both offenses are identical; the only difference being whether the negligence occurred during the performance of a lawful or unlawful act. See, De Mary v. State, 423 S.W.2d 331 (Tex.Cr.App.1968); Sykes v. State, 399 S.W.2d 349 (Tex.Cr.App.1966); Stout v. State, 460 S.W.2d 911 (Tex.Cr. App.1970).

We cannot agree that the evidence would support the submission of such charges.

■ As stated in Egbert v. State, 76 Tex.Cr.R. 663, 176 S.W. 560, 563 (Tex.Cr. App.1915):

" . . . negligent homicide is based wholly upon the theory that the evidence must show there was no intent to kill by an act *intentionally done*. Accidental homicide arises only when the act which caused the death was *unintentionally done*. . . . " (Emphasis added.)

■ In the instant case, the State's theory was murder, and the appellant offered evidence to show accident. The issue of accident was submitted to the jury. Having interposed the defense of accident, which was properly submitted to the jury, the appellant was not entitled to a charge on negligent homicide. See, Beasley v. State, 171 Tex.Cr.R. 115, 346 S.W.2d 123 (1961), which cited with approval Simmons v. State, 145 Tex.Cr.R. 619, 170 S.W.2d 742 (1943).

Further, in 4 Branch's Ann.P.C.2d ed. § 2181, p. 522, it is written:

"If the jury are instructed that if the killing was an accident they should acquit, it is not reversible error to fail to charge on negligent homicide. Garner v. State, [Tex.Cr.App.] 24 SW 420; Becknell v State, 47 Crim [Tex.Cr.R. 240] 240, 82 SW 1039; Combs v State, 52 Crim [Tex.Cr.R. 613] 616, 108 SW 649; Joy v State, 57 Crim [Tex.Cr.R. 93] 102, 123 SW [584] 588. See Taylor v State, 145 Crim [Tex.Cr.R.] 158, 166 S.W.2d 713."

Appellant's contention does not present reversible error.

■ Appellant also complains of the court's failure to charge on the law of aggravated assault. We fail to find that the appellant objected in writing or submitted a special requested charge as required by Articles 36.14 and 36.15, Vernon's Ann.C. C.P. See, Baity v. State, 455 S.W.2d 305, 309 (Tex.Cr.App.1970). No reversible error is presented. See Article 36.19, Vernon's Ann.C.C.P. *Cf.* Merka v. State, 82 Tex.Cr.R. 550, 199 S.W. 1123, 1127 (1918).

The appellant further contends the court erred in charging the jury on the issue of murder with malice in light of the evidence. We find no written objections or special requested charges in the record. See, Articles 36.14 and 36.15, supra.

■ Further, appellant urges the trial court erred in admitting certain opinion and conclusory testimony of Officers Anduiza and Ortiz, as well as a written statement of Officer Ortiz. These complaints are all grouped in one ground of error. Thus, the ground of error is multifarious and fails to comply with Article 40.09 § 9, Vernon's Ann.C.C.P. Nothing is presented for review.

■ We observe, however, that the oral testimony of both officers was admitted without objection. Thus, the errors, if any, were not properly preserved. In Johns v. State, 100 Tex.Cr.R. 65, 271 S.W. 926 (1925), it was held that the conclusory assertion of a witness is probative evidence if admitted without objection. See, also, 5 Tex.Jur.2d Appeal and Error—Criminal Cases § 40.

■ As to the written statement, we observe that, on cross examination of Officer Ortiz, the appellant read a substantial portion of the prior sworn statement in an attempt to show that his testimony was inconsistent with his earlier statement. On redirect examination, the State offered the statement as a prior consistent statement. Its use was carefully limited by the court in its charge to the purpose for which it was introduced—that of aiding the jury in assessing the credibility of the witness. There would appear to be no error.

The law of negligent homicide often presents troublesome legal questions. See, De Mary v. State, supra. The area is more problematical now in light of

Article 6701d § 50, Vernon's Ann.Civ.St., as amended 1971. The problems are discussed in Attorney General's Opinion No. M–1150 (June 7, 1972).

Further, in Mabou v. State, 429 S.W.2d 891 (Tex.Cr.App.1968), this court wrote:

" . . . It should also be observed that in view of the action of appellant's counsel in reading certain portions of the police report to the witness in the presence of the jury, the court would not have erred in permitting the state to offer in evidence other portions of the report on the same subject."

See, Article 38.24, Vernon's Ann.C.C.P.; Garcia and Herrera v. State, 473 S.W.2d 488 (Tex.Cr.App.1971).

Next, it is claimed the State unconstitutionally withheld from the jury "material written evidence" which tended to exculpate the appellant. The brief fails to allege what "written evidence" was withheld. There is an assertion that a watchband was found in the public parking lot, which was owned by either Escobedo or Rivera, and that this indicates "there was a scuffle at the parking lot between Escobedo and/or Rivera and the defendant."

■ We need not discuss the prosecutorial obligation to disclose material evidence favorable to the accused,[3] because it is axiomatic that reversible error in connection with improper suppression is not demonstrated unless supported by adequate proof in the record.[4] Allegations in the brief do not constitute proof. Harris v. State, 453 S.W.2d 838, 839 (Tex.Cr.App. 1970). Consequently, error is not shown.[5]

■ Appellant lastly complains that the trial court fundamentally erred in permitting the prosecutor to make inflammatory

statements regarding the pregnancy of the deceased during the trial and in the jury argument which materially prejudiced the jury. To none of the testimony concerning the fact the deceased was pregnant was there any objection offered. In fact, the appellant also offered evidence concerning the same. The appellant, in his testimony, acknowledged that he had killed a pregnant woman. The evidence showed the deceased was eight months pregnant at the time of her death and a baby girl was delivered by cesarean operation shortly thereafter. The prosecutor's argument only made reference to an undisputed fact in evidence and there was no objection made to such argument. No error is presented.

The judgment is affirmed.

---

3. See, e. g., Means v. State, 429 S.W.2d 490 (Tex.Cr.App.1968); Crutcher v. State, 481 S.W.2d 113 (Tex.Cr.App. 1972).

4. In addition, there must be a showing that the existence of the allegedly suppressed item was not known to the defendant at trial, and, of course, that the item does exist in fact. See Harris v. State, supra; Hinkle v. State, 442 S.W.2d 728, 734 (Tex.Cr.App.1969); Evans v. State, 444 S.W.2d 641, 646 (Tex.Cr.App.1969).

5. The State's brief claims the evidence complained of came to the prosecutor's knowledge after the State rested its case and was immediately brought to the attention of the defense counsel. Such action does not appear of record. Detective Tapia testified he found a watch crystal and a retaining ring on the parking lot three feet from the body of the deceased. We find nothing in the record about a watchband or its ownership.