**George BAINE, Judy Baine, Dane Scott Knight and Paula Knight, Appellees,**

v.

**OKLAHOMA GAS & ELECTRIC COMPANY, Appellant.**

**Nos. 77948, Appeal No. 78345.**

Court of Appeals of Oklahoma, Division No. 3.

Nov. 3, 1992.

Rehearing Denied Dec. 29, 1992.

Certiorari Denied March 31, 1993.

---

Hugh D. Rice, H.D. Binns, Jr., Rod L. Cook, Roberta Browning Fields, Julie A. Delluomo, Oklahoma City, for appellant.

Harry Scoufos, Sallisaw, and Harvey L. Chaffin, Diane Barker, Tahlequah, for appellees.

## OPINION

HANSEN, Vice–Chief Judge:

In this tort action arising from an airplane accident, Appellant seeks review of the trial court's orders granting Appellees' motion for new trial and denying Appellant's request to specify the grounds on which the new trial was granted. We reverse and remand.

Appellees George Baine and Dane Scott Knight were the passenger and pilot, respectively, of a small airplane participating in a search for a missing elderly man. The accident occurred when the airplane struck a wire of an electric transmission power line. Baine and Knight were injured and seek recovery for those injuries. Their wives, the other Appellees, brought derivative claims.

Appellant filed two motions for summary judgment. In the first, it argued lack of duty to mark the line because it neither constructed nor owned the line. In the second, Appellant argued alternatively a lack of duty because the accident was not foreseeable, or that the sole proximate cause of the accident was Appellee Dane Knight's negligence. The trial court denied both motions.

The action was tried to a jury, which found Appellee Dane Knight 100% negligent, and Appellant 0% negligent. Appellees moved for a new trial, alleging 21

errors. The trial court granted Appellees' motion without specifying the alleged errors upon which it relied.

Appellant filed its initial petition in error from the trial court's order granting a new trial. Appellant filed a second petition in error from the trial court's denial of its request for the court to state its reasons for granting a new trial. The Supreme Court consolidated the two appeals for our consideration.

In its brief in chief, Appellant sets forth five propositions alleging trial court error. Because we find the issue of lack of duty determinative, we need not consider the remaining propositions.

■ "The threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to have been harmed." *Rose v. Sapulpa Rural Water Co.*, 631 P.2d 752, 756 (Okla.1981).

Our Supreme Court, in *Wofford v. Eastern State Hospital*, 795 P.2d 516, 519 (Okla.1990), found that:

> Whether a defendant stands in such relationship to a plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff is a question for the court.

■ The determination of Appellant's duty toward Appellees was therefore a question of law for the trial court. In making that determination, the most important consideration is foreseeability. *Wofford v. Eastern State Hospital*, at 519. As a general rule:

> ... a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.

*Wofford*, at 519.

■ The negligence alleged by Appellees here is Appellant's failure to mark the static line to make it more visible to aircraft. Whether there is a duty to so mark an elevated transmission line has not been decided in Oklahoma.

The parties cite a number of cases from other jurisdictions, each party finding decisions which appear to support their contentions. The common thread of those decisions is that the ultimate result turns on the question of foreseeability, and what is, in effect, a risk analysis.

We find the holding and reasoning in *Florida Power and Light Co. v. Lively*, 465 So.2d 1270 (Fla.App. 3 Dist.1985) to be most instructive. There, as here, a small plane collided with a nonenergized static line. The line was approximately 102 feet off the ground. The plane was flying at a low altitude because of an emergency caused by loss of power. The Florida Court of Appeals adopted the following rule, and under the facts there found no duty:

> ... no duty or breach of duty exists as a matter of law where the following elements exist: the height of power lines and their location are in compliance with applicable ordinances and FAA regulations; no notice of prior accidents of a similar kind involving the power lines exists; and the power lines, as constructed, do not create an unreasonable risk of harm.

*Florida Power and Light v. Lively*, at 1274.

We have not been directed to any evidence which establishes that either the height of the line in question, or its location, are violative of applicable ordinances, state rules or laws, or Federal Aviation Administration regulations. Similarly, the record does not reflect any evidence Appellant had been put on notice of previous aviation accidents at the same location.

We are then left with the question as to whether the lines created an unreasonable risk of harm. In considering that question, we first note we are unpersuaded by Appellees' assertion the law requires the highest standard of care be imposed on Appellant because an electrical transmission line is a "dangerous instrumentality".

■ While the dangerous instrumentality rule may be appropriately imposed in an action for injuries by electrical shock, we do not find it relevant to the circumstances of this action. See, *Florida Power and Light Co. v. Lively*, at 1276, footnote 5.

The standard we find applicable here is that of ordinary care, which is:

> ... that degree of care which ordinarily prudent persons engaged in the same kind of business usually exercise under similar circumstances, and means that degree of care which is reasonably commensurate with the danger of instrumentality used.

*Phillips Petroleum Co. v. Price*, 298 P.2d 772 (Okla.1956)

In establishing the limits of our ordinary care examination as set forth in *Phillips Petroleum*, we again find guidance in *Florida Power and Light Co. v. Lively*, at 1273:

> We do not believe it could be argued logically that every transmission line, regardless of height and location must be marked, under penalty of liability for all ensuing air accidents.

Assuming, without deciding, that Appellant would be the party responsible for marking the line, we find it had no duty to do so because it could not be reasonably contemplated that a plane would have been flying at the altitude of the crash in that location.

It is uncontroverted the line is not in the vicinity or approach pattern of any airport, nor is it located over open water. It is in these locations the courts have consistently imposed a higher standard of care in marking lines. While some aircraft had been seen in the area in the past, there is no indication their appearance was so frequent, or of such nature, to put Appellant on notice of special safety requirements.

The line spans a four lane, heavily traveled highway. The location is in a rural area, but with approximately 40 homes within a half mile circular area. The poles holding the line are set on hills on both sides of the highway. The plane struck the line at approximately 180 feet above the surface, with the highest point of the line above surface being about 220 feet.

Although it is not determinative of the question of foreseeability, Appellant could reasonably expect the pilot of any aircraft in the area of its line to comply with the Federal Aviation Administration regulations governing altitude of flight. Under those regulations:

> Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:
>
> (c) Over other than congested areas.[1] An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

14 CFR § 91.79(c) (1990)

The plane here was not involved in takeoff or landing. It is undisputed it was operating under 500 feet above the surface. Whether the area was sparsely populated within the meaning of the regulation appears to be in controversy, but the plane's flight path would have taken it over the highway on which vehicles were present and almost certainly within 500 feet of a mechanic's garage on the side of the highway.

■ We are unpersuaded by Appellees contention the pilot was exempted from compliance with FAA flight regulations under the "emergency" exception. The kind of emergency contemplated by the regulations is an inflight emergency that requires immediate action, not the urgent need to find the missing person before he was injured. See, *Chritton v. National Transportation Safety Board*, 888 F.2d 854, 860 (D.C.Cir.1989).

Furthermore, even if he were minimally in compliance with § 91.79(c), the pilot's action would still be beyond the range of probability for which Appellant could be found responsible.

■ Appellant had no obligation to guard against every possible danger that might arise. *Sears, Roebuck & Co. v. Skeen*, 207 Okla. 180, 248 P.2d 582 (1952). More specifically, with respect to aircraft, we find, as a matter of law, those maintaining power transmission lines have no duty to "anticipate every possible fortuitous cir-

---

1. Over any *congested* area of a city, town or settlement the minimum altitude is 1,000 feet above the highest obstacle. 14 CFR § 91.79(b) (1990).

cumstance that might cause injurious contacts with those lines". See, *Florida Power and Light Co. v. Lively*, at 1274.

Appellees also argue Appellant has a duty to mark lines in "navigable air space", that is, any possible location permissible within Federal Aviation Regulations, no matter how improbable. This would effectively require Appellant to mark most of its 50,000 miles of line which are not located near airports, heliports, hospitals, or over open water. Such a rule would defy common sense and go well beyond the duty imposed in any other jurisdiction.

In the absence of any legal duty which could here be imposed on Appellant, we find the trial court erred in denying Appellant's motion for summary judgment.

Because we find the trial court erred in overruling Appellant's motion for summary judgment based on lack of duty, we need not address the authority of the trial court to refuse Appellant's request to specify the grounds upon which it granted Appellees a new trial.

Accordingly, the orders of the trial court are REVERSED and this matter is REMANDED to the trial court for entry of judgment consistent with this opinion.

BAILEY, P.J., and HUNTER, J., concur.