# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4040

_____

| | | |
|---|---|---|
| CHRISTINE J. NANNINGA, individually, and on behalf of Larry L. Nanninga and Scott M. Nanninga, and as personal representative of the estate of Bruce E. Nanninga, deceased; LARRY L. NANNINGA; SCOTT M. NANNINGA, | * * * * * * * * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| Plaintiffs - Appellants, | * | Western District of Missouri |
| | * | |
| v. | * | |
| | * | |
| THREE RIVERS ELECTRIC | * | |
| COOPERATIVE, a Missouri Corporation, | * | |
| | * | |
| Defendant -Appellee. | * | |

_____

Submitted: September 15, 1999
Filed: February 8, 2000

_____

Before McMILLIAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

TUNHEIM, District Judge.

On July 31, 1994, plaintiffs' decedent Bruce Nanninga, a flight engineer, was killed along with three other crew members when their CH-47 military helicopter struck a set of defendant's power lines strung approximately 100 feet over the Osage River in central Missouri. Nanninga drowned as a result of the accident, and his widow and children filed a wrongful death diversity action in the United States District Court for the Western District of Missouri. Plaintiffs filed suit in the Western Division, but the district court granted defendant's motion for intradistrict change of venue and transferred the action to the Central Division.

Meanwhile, the families of two of the three other crew members killed in the crash brought suit in Missouri state court. On May 7, 1998, after discounting for comparative fault on the part of the decedents, a jury awarded those plaintiffs $2,750,000 and $2,500,000, respectively.

On August 11, 1998, the jury in this action returned a verdict for defendant. The district court denied plaintiffs' motions for judgment as a matter of law and for a new trial and entered judgment for defendant. Plaintiffs' appeal raises the following issues: (1) whether the state court jury's finding of liability should collaterally estop defendant from contesting its liability in this case; (2) whether the district court correctly instructed the jury that defendant owed plaintiffs' decedent a duty of ordinary care; (3) whether the trial court erred in denying plaintiffs' motion for a change of venue; (4) whether the trial court erred in restricting plaintiffs' voir dire; (5) whether the trial court erred in delaying its ruling on the issue of comparative fault; (6) whether the trial court erred in permitting evidence and argument relating to the decedents' violation of military regulations; (7) whether the trial court erred in permitting evidence that the United States Army paid for the replacement of the power lines; (8) whether the trial court erred in allowing testimony via affidavit; (9) whether the trial court adequately instructed the jury concerning media publicity; and (10) whether the verdict was against

the weight of the evidence.[2]  Although most of plaintiffs' contentions are without merit, we conclude that the district court erred in its instruction concerning the applicable standard of care.  Accordingly, we reverse and remand for a new trial.

## A.     The Applicable Standard of Care

The district court instructed the jury that defendant owed a duty of ordinary care to plaintiffs' decedent.  Plaintiffs contend that, under Missouri law, defendant owed a duty of the highest degree of care because defendant is supplier of electricity.  We review the district court's determination of state law de novo.  *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991); *First Bank v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998).  Where state law is ambiguous, we predict how the state's highest court would resolve the issue.  *See First Bank*, 161 F.3d at 510.

In Missouri, a supplier of electricity is required to exercise the highest degree of care to prevent injuries it can reasonably anticipate.  *See Merrick v. Southwest Elec. Coop.*, 815 S.W.2d 118, 120 (Mo. Ct. App. 1991).  The supplier can still be liable even if it does not anticipate the exact injury or the manner in which it came about.  *See Washburn v. Grundy Elec. Coop.*, 804 S.W.2d 424, 430 (Mo. Ct. App. 1991).  Nevertheless, the district court determined that a duty of ordinary care was applicable in this case because the accident did not involve the inherently dangerous

---

[2]The parties also bring several motions.  Both parties move to supplement the appellate record with material from the state court case; neither party has responded to the other's motion.  Accordingly, both motions are granted.  Plaintiffs also bring a motion to certify the question of the proper standard of care to the Missouri Supreme Court, or in the alternative, for a stay pending the appeal of the state court case.  The Missouri Supreme Court has held that it lacks jurisdiction to render opinions on questions of law certified by federal courts.  *See Zeman v. V.F. Factory Outlet, Inc.*, 911 F.2d 107, 108-09 (8th Cir. 1990).  As plaintiffs themselves chose a federal forum, they can offer no compelling reason for a stay of these proceedings.  The motion is therefore denied.

properties of electricity. The district court relied on *Pierce v. Platte-Clay Elec. Coop.*, 769 S.W.2d 769 (Mo. 1989). In *Pierce*, the plaintiff struck a guy wire with his tractor and broke the stub pole that the wire supported. *See id.* at 770-71. The stub pole secured a cable that supported a utility pole across an adjacent highway. *See id.* at 771. The cable hung down over the highway, and the plaintiff was injured when he attempted to flag down an oncoming car to warn the driver of the danger. *See id.* In a footnote, the court explained that a duty of ordinary care applied because the guy wire, stub pole, and cable were all merely support structures that did not carry electrical current and thus the "accident did not involve the inherently dangerous properties of electricity." *Id.* at 771 n.1.

Defendant argues that the trial court correctly applied a duty of ordinary care because plaintiffs' decedent drowned and thus, as in *Pierce*, the accident did not involve electricity. Unlike the equipment in *Pierce*, however, the power lines involved in the helicopter crash carried electrical current. Defendant does not contend that electricity posed no danger, but simply argues that it did not, in this case, cause the decedent's death. Had electricity killed the decedent, it appears likely that Missouri courts would apply the duty of the highest degree of care, because such a duty applies even when the exact injury or manner in which it came about is unforeseeable. *See id.* at 776; *Washburn*, 804 S.W.2d at 430; *Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 940 (Mo. Ct. App. 1983). The mere fortuity that electricity did not in fact cause plaintiffs' decedent any injury is a slim basis on which to distinguish the case law imposing the highest degree of care on suppliers of electricity. When an individual is killed as a result of contact with electrified wires, it defies common sense to later determine the nature of the duty owed solely on the basis of the precise manner of death. By leaving the applicable standard of care to be sorted out after an accident occurs, such a rule would diminish the law's ability to promote safe behavior and would thus at least partially circumvent the purposes of Missouri's law of negligence. *See Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc.*, 700 S.W.2d 426, 432 (Mo. 1985) (en banc) (explaining that the prevention of future harm is a factor in imposing

a duty of care). Such a rule is also inconsistent with the rule that suppliers of electricity must exercise the highest degree of care even when the exact injury or manner in which it came about is unforeseeable. *See Washburn*, 804 S.W.2d at 430. Finally, although a Missouri trial court's conclusions of law do not control our analysis of Missouri law, it is helpful to note that in the state case arising out of this very accident, the state court determined that the highest degree of care applied.

Defendant cites cases involving similar accidents from other states in which the courts refused to apply the highest degree of care standard. *See Baine v. Oklahoma Gas & Elec. Co.*, 850 P.2d 346 (Okla. Ct. App. 1992); *Florida Power and Light Co. v. Lively*, 465 So.2d 1270 (Fla. Dist. Ct. App. 1985). In *Florida Power and Light*, the court explicitly based its determination that the higher standard of care was inapplicable on the fact that the wires involved in the accident did not carry electrical current. *See Florida Power and Light*, 465 So.2d at 1276 n.5. The *Baine* court cited *Florida Power and Light* to support its holding that an ordinary standard of care applied in a similar accident involving a non-energized wire.[3] *See Baine*, 850 P.2d at 348-49. The fact that other courts have found it appropriate to apply a lower standard of care in cases in which injury by electricity was not even a possibility does not persuade us that the higher standard of care is inapplicable in a case where electricity could have, but did not, cause injury.

---

[3]The *Baine* court also noted, without citing specific cases, that courts have consistently imposed a higher standard of care in maintaining lines over open water, a circumstance not present in *Baine*. As the lines involved here stretched over the Osage River, this is yet another reason that *Baine* is distinguishable.

Defendant also points out that in all of the cases plaintiffs cite to support the imposition of a higher duty, electricity was the causative force of the injury. *See, e.g., Merrick*, 815 S.W.2d at 119-20 (plaintiffs' son electrocuted when he attempted to remove a wire from a utility pole). We find this argument unpersuasive. As noted above, defendant does not contend that electricity could not have caused any injury in this case. Nor does defendant claim that applying the higher standard in this case would impose additional or inconsistent duties upon it as it seeks to prevent electrical injury. Indeed, the measures plaintiffs argue were warranted in this case are no different than those that would have served to prevent electrical injury. Put simply, plaintiffs' case rests on the contention that defendant should have done more to prevent their decedent from coming into contact with its energized wires. Assuming that plaintiffs are correct, whatever defendant might have done to prevent such contact would necessarily have served the purpose of preventing contact with the electricity in the wires. The fact that such measures may also have had the effect of preventing deaths that did not involve electricity is no reason to impose a lesser standard of care. Accordingly, we conclude that the district court erred in refusing to instruct the jury that defendant owed a duty of the highest degree of care.

**B.     Collateral Estoppel**

In their motion for judgment as a matter of law and again in their motion to renew request for judgment as a matter of law, plaintiffs argued that defendant should be collaterally estopped from contesting its liability because the state court jury found defendant liable. The district court declined to apply collateral estoppel because the state court applied a different standard of care, the plaintiffs could have intervened in the state case, and the state court submitted the issue of the decedents' comparative fault to the jury, whereas the district court determined that there was no basis for comparative fault.

The application of collateral estoppel in diversity cases is determined according to state law. *See Jaramillo v. Burkhart*, 999 F.2d 1241, 1243 (1993). In Missouri, trial courts have broad discretion in permitting the offensive use of collateral estoppel. *See State v. Daniels*, 789 S.W.2d 243, 245 (Mo. Ct. App. 1990). In determining whether collateral estoppel applies, Missouri courts consider four factors: 1) the identity of the issues involved in the prior adjudication and the present action; 2) whether the prior judgment was on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and 4) whether the party had a full and fair opportunity to litigate the issue for which collateral estoppel is asserted. *See In re Caranchini*, 956 S.W.2d 910, 912-13 (Mo. 1997) (en banc), *cert. denied*, 118 S. Ct. 2347 (1998). Fairness is an especially important consideration when a party not involved in the prior suit seeks to apply non-mutual collateral estoppel. *See id.* at 913; *Neurological Med., Inc., v. General Am. Life Ins. Co.*, 921 S.W.2d 64, 68 (Mo. Ct. App. 1996); *Kayes v. Kayes*, 897 S.W.2d 51, 54 (Mo. Ct. App. 1995); *Bi-State Dev. Agency v. Whelan Sec. Co.*, 679 S.W.2d 332, 335 (Mo. Ct. App. 1984). The trial court must weigh the totality of the circumstances of the prior and subsequent lawsuits in determining whether the application of collateral estoppel would be fair. *See Daniels*, 789 S.W.2d at 245.

The most obvious difference between the state case and the instant case is the different standards of care that were used to evaluate defendant's conduct. As set forth above, however, we conclude that the district court should have instructed the jury that defendant owed plaintiffs' decedent a duty of the highest degree of care, which is the standard that the state court applied. Our resolution of this issue brings the issues in the two cases much closer together. Nonetheless, we conclude that the district court did not abuse its discretion in declining to apply collateral estoppel for the remaining reasons cited by the court, namely, that the state court case involved comparative fault and that plaintiffs could have joined the earlier action.

Plaintiffs first argue that the presence of the issue of comparative fault in the state case does not mean that the issues in the two cases were not identical. Plaintiff cites *Bendis v. Alexander and Alexander, Inc.*, 916 S.W.2d 213 (Mo. Ct. App. 1995), for the proposition that causes of action are identical for collateral estoppel purposes if the underlying facts in both lawsuits are the same. *Bendis*, however, dealt with the identity of causes of action for res judicata purposes and did not discuss collateral estoppel. *See id.* at 217. Plaintiff argues that the same principle should apply for purposes of collateral estoppel, but this argument misapprehends the difference between collateral estoppel and res judicata. Collateral estoppel applies only to issues actually litigated in the previous action. *See Finley v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 593, 595 (Mo. Ct. App. 1998). For this reason, identity of the issues is a critical factor in applying the doctrine of collateral estoppel. *See Caranchini*, 956 S.W.2d at 913. In contrast, res judicata can also preclude relitigation of issues which might have, but were not, determined in the previous action. *See Finley*, 958 S.W.2d at 595. Thus, while identity of facts can support the application of res judicata in a later case, it is not sufficient, by itself, to justify the application of collateral estoppel.

Plaintiffs next contend that, far from being a reason to preclude collateral estoppel, the fact that the district court ruled that comparative fault is inapplicable in the instant action is further support for the application of collateral estoppel. Because plaintiffs' decedent cannot be found at fault, the only issue in this case is whether defendant is liable. The state jury found defendant at fault for the accident, so, plaintiffs argue, it follows that defendant should be estopped from contesting liability in this case. While plaintiffs' argument is not without some merit, we doubt that using a judgment in which defendants were found only partially liable in order to establish defendant's fault for the entire accident meets the overriding requirement of fairness necessary for collateral estoppel. *See Neurological Med., Inc.*, 921 S.W.2d at 68 (stating that "[f]airness is the overriding consideration" in applying collateral estoppel). Thus, the presence of comparative fault as an issue in the state case precludes the state

court judgment from conclusively determining the issue of defendant's liability in this case.

Even if we were inclined to agree with plaintiffs that the absence of comparative fault as an issue in this case does not forestall the application of collateral estoppel, we hold that the district court did not abuse its discretion in finding that plaintiffs' ability to join in the earlier action prevents them from taking advantage of the prior judgment. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (stating that offensive collateral estoppel should not be used when the plaintiff could have joined in the earlier action).[4] This rule serves to discourage plaintiffs from waiting for the results of a prior lawsuit before commencing their own in the hope that they may take advantage of a favorable judgment. *See id.*

Missouri Supreme Court Rule 52.05(a) permits plaintiffs to join in one action if they "assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." Because plaintiffs' cause of action in this case arose out of the same accident that gave rise to the state case, it appears that plaintiffs could have joined in the state case. Plaintiffs nonetheless argue that they could not have joined the state case because their counsel knew that venue was improper and the parties in the state case denied permission. In order to understand plaintiffs' argument, it is necessary to detail the circumstances surrounding the issue of venue in the state case.

---

[4]Although *Parklane Hosiery* applied federal law in determining whether collateral estoppel applied, Missouri courts frequently look to it when analyzing the issue of collateral estoppel, *see, e.g., Caranchini*, 956 S.W.2d at 912-14, and several Missouri courts, in dicta, have cited this particular rule with approval. *See Neurological Med., Inc.*, 921 S.W.2d at 68 n.2; *Wright v. Mullen*, 659 S.W.2d 261, 264 n.1 (Mo. Ct. App. 1983).

The state court plaintiffs originally sued a number of defendants, including three Boeing corporations. The plaintiffs grounded venue in St. Louis because two of the Boeing corporations maintain a registered agent in St. Louis. Without the Boeing defendants, St. Louis would not have been a proper venue. After the case was removed to federal court, the plaintiffs dismissed their claims against the Boeing defendants and the case was remanded to state court. Defendant maintained that the state court plaintiffs pretensively joined the Boeing defendants in order to gain venue in St. Louis, because the plaintiffs knew or should have known that the Boeing defendants could not be held liable under the governing law. After the state plaintiffs' counsel averred that he did not know that the Boeing defendants could not be held liable, the state court denied the remaining defendants' motion to transfer venue and permitted the action to remain in St. Louis despite the dismissal of the Boeing defendants.

Plaintiffs first claim that they sought permission from the parties to join the action and were denied, but they point to nothing in the record to support this assertion and defendant denies it. Furthermore, plaintiffs do not explain why the parties' permission was necessary other than to state that they could not have sought court permission to join because their counsel knew that venue in St. Louis was improper as to both the Boeing defendants and as to plaintiffs themselves. As the state trial court noted, however, venue is determined at the time the action is filed. *See State ex rel. DePaul Health Ctr. v. Mummert*, 870 S.W.2d 820, 823 (Mo. 1994) (en banc). Because the state court ultimately determined that there was no pretensive joinder and venue was proper as to defendant, counsel's knowledge concerning the invalidity of the claims against the Boeing defendants would not later render venue improper. Plaintiffs' further assertion that venue would also have been improper as to themselves misconstrues the concept of improper venue, which is a waivable defense. *See* Mo. Sup. Ct. R. 55.27(g)(1). Plaintiffs could thus have chosen to waive any defects in venue as to themselves in order to join the state court action. Because it appears that plaintiffs could have joined in the state court action, therefore, the district court acted

within its discretion in refusing to give collateral estoppel effect to the state court judgment.

## C.     Plaintiffs' Remaining Arguments

Although we reverse and remand for a new trial based on the district court's error regarding the applicable standard of care, we briefly address plaintiffs' remaining arguments insofar as they are likely to arise again below.

### 1.     Change of Venue

Plaintiffs initially filed this lawsuit in the Western Division of the Western District of Missouri in Kansas City. The district court granted defendant's motion for intradistrict change of venue and the case was assigned to the Central Division in Jefferson City. The district court denied plaintiffs' motion for a change of venue back to Kansas City. Plaintiffs argue that the jurors in Jefferson City were biased in favor of defendant because they were members of electrical cooperatives.

The district court's denial of a motion for a change of venue is reviewed for abuse of discretion. *See Shapiro v. Kauffman*, 855 F.2d 620, 621 (8th Cir. 1988). The party challenging the impartiality of the jurors has the burden of showing that particular jurors hold opinions that raise a presumption of partiality. *See id*. Plaintiffs have failed to make this showing. Other than the adverse verdict, they point to nothing that could call the jurors' impartiality into question. The district court did not abuse its discretion in permitting the action to remain in Jefferson City.

## 2. Voir Dire

Plaintiffs argue that the district court abused its discretion in limiting voir dire both in time and scope. Defendant first contends that because the plaintiffs did not object to the twenty minute time limit on voir dire, we must review that issue for plain error. Although the record does not reflect whether plaintiffs objected to the time limit, under either standard of review the district court did not err in limiting voir dire in time or scope.

District courts have broad discretion in determining what questions will be asked during voir dire. *See Ratliff v. Schiber Truck Co.*, 150 F.3d 949, 956 (8th Cir. 1998). Plaintiffs cite specific questions that they ought to have been allowed to ask, concerning such topics as holding companies accountable, placing a monetary value on human life, and media coverage of a plane crash in Italy wherein the pilots were criminally prosecuted for violating military regulations. While the district court denied some of plaintiffs' questions, the court and plaintiffs' counsel together covered the following topics: the jurors' background, ability to serve, prior jury service, and familiarity with the case and witnesses; whether any jurors were users or members of defendant; juror familiarity with defendant's insurance carrier; monetary awards in lawsuits; military and aviation experience; opinions about compensating for a loss of life with money; and feelings about lawsuits being brought against a company. These questions touched on nearly all the areas plaintiff contends should have been covered during voir dire, and we are unable to conclude that the time limit or the restrictions were an abuse of discretion.

## 3. Comparative Fault

On the fourth day of trial, the district court determined that it would not instruct the jury on comparative fault. Plaintiffs argue that the district court erred in not making this determination earlier and in subsequently permitting defendant to present evidence

and argument concerning the pilots' violations of military and civilian flight rules. Plaintiffs assert that had the trial court ruled on the comparative fault issue earlier and properly enforced its ruling, no evidence concerning these alleged violations would have been permitted. The record does not reflect whether plaintiffs objected either to the timeliness of the ruling or the subsequent admission of evidence; regardless of the standard of review, however, the district court did not err in admitting this evidence, because it was relevant to defendant's argument that its alleged negligence was not the cause of the accident. *See Whisenand v. McCord*, 996 S.W.2d 528, 531 (Mo. Ct. App. 1999) (explaining that a defendant may introduce any evidence that tends to establish that it is not liable for negligence, including evidence that a third party caused the accident).

### 4.       Evidence that the Army Paid to Replace Power Lines

Plaintiffs contend that defendant violated a stipulated motion in limine to exclude testimony that the Army reimbursed defendant for the replacement of its power lines. Although the district court instructed the jury to disregard the testimony, which consisted simply of an affirmative answer to a single question, plaintiffs argue that the district court should have further rebuked defense counsel and its failure to do so prejudiced plaintiffs. The record does not show that plaintiffs requested an admonition, nor does it reflect the existence of any such stipulation, other than a reference in plaintiffs' written motions in limine. Furthermore, the transcript indicates that defense counsel elicited this testimony only after plaintiffs' counsel first asked the witness about the cost of replacing the lines. While counsel's misconduct may in some cases be so prejudicial as to require a new trial, *see Sanders-El v. Wencewicz*, 987 F.2d 483, 485 (8th Cir. 1993), we conclude that under these circumstances the district court's instructions to the jury adequately cured any prejudicial effect this testimony may have had.

### 5.	Admission of Evidence by Affidavit

Plaintiffs contend that the district court erred in admitting seventeen affidavits into evidence.  The affidavits disputed the testimony of Mike Harp, whose state court testimony was read into evidence after the district court determined that he was an unavailable witness.  Absent a stipulation of the parties, affidavits may not be treated as evidence.  *See Eames v. Eames*, 463 S.W.2d 576, 579 (Mo. Ct. App. 1971).  Defendant contends that plaintiffs agreed to the admission of the affidavits in return for the court's ruling admitting Harp's former testimony.  The parties indicate that the following colloquy occurred between court and counsel:

| | |
|---|---|
| Madden: | Judge, we would like to use the affidavits attached to the summary judgment, and we would also like to call one live witness on that issue. |
| The Court: | I'll do it. |
| Cloon [plaintiffs' counsel]: | They can have that in their case. |
| The Court: | Huh? |
| Cloon: | You mean in their case? |
| The Court: | Yeah. |
| Cloon: | Okay. |
| The Court: | Yeah. |
| Cloon: | But I'm just going to read, and if they want to read their cross-examination, I guess, they can do that. |
| Virtel: | Yeah. |
| Cloon: | But then in their case in chief. |
| Virtel: | Yeah, right. |
| Cloon: | Okay. |

While the meaning of this dialogue is somewhat difficult to decipher, it is consistent with defendant's contention that plaintiffs agreed to permit the introduction of the affidavits. Such an interpretation is further bolstered by the fact that plaintiffs did not raise this issue in their motion for a new trial. Accordingly, the district court did not err in admitting the affidavits.

## CONCLUSION

The district court did not err in refusing to give collateral estoppel effect to the state court judgment, in denying plaintiffs' motion to change venue, in restricting voir dire, or in the various evidentiary rulings to which plaintiffs object. Because the district court improperly instructed the jury on the applicable standard of care, however, we reverse and remand for a new trial.

MURPHY, Circuit Judge, dissenting.

I respectfully dissent because I believe that the district court did not err in instructing the jury on the standard of care.

The Missouri Supreme Court has made it clear that the highest standard of care does not apply in all cases brought against suppliers of electricity. If the accident causing injury did not involve "the inherently dangerous properties of electricity, the 'highest degree of care' standard which is utilized when electricity is the agent of injury is not applicable." Pierce v. Platte-Clay Elec. Coop., 769 S.W.2d 769, 771 n.1 (Mo. 1989). In the case before the court it is not alleged that the inherently dangerous properties of electricity, such as a risk of shock or electrocution, caused the decedent's death. Since electricity was not "the agent of injury," the district court properly instructed the jury on the ordinary care standard. Id.

-15-

The court cites several Missouri cases for the proposition that suppliers of electricity are required to exercise the "highest degree of care to prevent injury it can reasonably anticipate," but in those cases electricity was the agent of injury. <u>Merrick v. Southwest Elec. Coop.</u>, 815 S.W.2d 118, 120 (Mo. Ct. App. 1991); <u>see also</u> <u>Washburn v. Grundy Elec. Coop.</u>, 804 S.W.2d 424, 430 (Mo. Ct. App. 1991); <u>Mrad v. Missouri Edison Co.</u>, 649 S.W.2d 936, 940 (Mo. Ct. App. 1983). No Missouri case indicates that the highest degree of care standard should be applied just because the accident involved a collision with power lines.

Under Missouri law the key inquiry is whether the dangerous propensity of electricity caused the injury, and the standard is ordinary care if electricity did not cause it. <u>See</u> <u>Pierce</u>, 769 S.W.2d at 771 n.1. The court advocates a rule here which would apply the highest standard of care in an accident involving power lines rather than the rule which turns on whether the accident was caused by electricity. That is a policy choice which should be made by Missouri rather than by a federal court sitting in diversity. I would affirm the judgment.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.