**NEUROLOGICAL MEDICINE, INC., et al., Respondents/Cross–Appellants,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Appellant/Cross–Respondent.**

Nos. 67439, 67440.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 11, 1996.

Application to Transfer Denied
May 28, 1996.

Edward V. Crites, St. Louis, for appellant.

Morris E. Stokes, Clayton, for respondent.

CRAHAN, Presiding Judge.

General American Life Insurance Company ("Defendant") appeals from an adverse judgment entered pursuant to a jury verdict in an action for contribution brought by Plaintiffs, Neurological Medicine, Inc. ("NMI"), and Raymond F. Cohen, D.O. (together "Plaintiffs"). Plaintiffs cross-appeal. We find Defendant's contention that Plaintiffs failed to make a submissible case dispositive of both appeals. We reverse and remand for entry of judgment in favor of Defendant. Plaintiffs' cross-appeal is dismissed as moot.

The present action for contribution was preceded by a wrongful death action brought by the decedent's husband against Plaintiffs. He obtained a judgment for $200,000 which was affirmed in *Stafford v. Neurological Medicine, Inc.*, 811 F.2d 470 (8th Cir.1987). Plaintiffs satisfied the judgment and brought this action against Defendant for contribution and indemnity, seeking to recover the $200,-000 plus interest paid to Mr. Stafford and attorney's fees.

A detailed recapitulation of the evidence supporting the judgment against Plaintiffs in the first trial is set forth in *Stafford*. Insofar as is pertinent to the instant appeal, there was evidence in that case that in 1984, prior to having surgery to remove her lung cancer, Pauline Stafford received a CT scan[1] to determine whether the cancer had spread to her brain. Dr. Raymond F. Cohen, an employee of NMI, interpreted the CT scan and determined that Mrs. Stafford did not have a brain tumor. Mrs. Stafford's lung cancer was then successfully removed.

Mrs. Stafford was covered by Medicare. General American was the regional Medicare administrator. NMI and Dr. Cohen presented evidence that General American instituted a policy whereby it would not pay for CT scans used to rule out a particular condition. Therefore, in order for NMI to be paid for conducting the CT scan, instead of writing "to rule out brain tumor" in the diagnosis section of Mrs. Stafford's Medicare claim form, an NMI employee, pursuant to Dr. Cohen's instructions, wrote "brain tumor" in the diagnosis section of the form. Mr. and Mrs. Stafford eventually received a copy of this form. Two days after the Staffords received the form, Mrs. Stafford committed suicide by hanging herself.

The theory upon which Mr. Stafford brought his wrongful death action against Plaintiffs was that they were negligent in writing the words "brain tumor" on the claim form and that this negligence caused his wife's death. After the jury rendered its verdict for Mr. Stafford, the trial court granted NMI's and Dr. Cohen's motions for JNOV and alternative motions for a new trial on the grounds that the evidence failed to make a submissible case on the issue of causation and the verdicts were against the weight of the evidence. On appeal, these rulings were reversed and the judgment in Mr. Stafford's favor was reinstated. *Stafford*, 811 F.2d at 476.

The central issue in the wrongful death suit and on appeal thereof was the sufficiency of the evidence to support a finding that NMI's and Dr. Cohen's negligence in writing "brain tumor" on the form directly caused or contributed to cause Mrs. Stafford's death by suicide. In Missouri, suicide is generally deemed to be an independent intervening act which breaks the causal con-

---

1. CT scan, or computerized tomography, is a medical procedure in which the patient is placed in a tunnel-like medical scanner and computer-

ized images of the body are taken. These images aid diagnoses by providing more detailed information than conventional X-rays.

nection between a prior negligent act and the death. *Eidson v. Reproductive Health Services*, 863 S.W.2d 621, 627 (Mo.App.1993). However, a submissible case may still be made if the evidence establishes that the defendant's allegedly negligent act caused the decedent to become insane in the sense that 1) the insanity prevented the decedent from understanding what he or she is doing or understanding its inevitable or proper consequences, or 2) the decedent's act of suicide is the result of an insane impulse which prevented reason from controlling his or her actions. *Id.*, citing Restatement (Second) of Torts, § 455 (1965). The evidence must also establish that the decedent committed suicide while so insane. *Id.* Thus, as the Eighth Circuit acknowledged in *Stafford*, under Missouri law, when the defendant's conduct can be shown to have caused the victim to become insane and bereft of reason such that the victim "involuntarily" commits suicide, those actions can constitute the proximate cause of death. *Stafford*, 811 F.2d at 473 (citing *Wallace v. Bounds*, 369 S.W.2d 138, 143–44 (Mo.1963)).

In *Stafford*, the Eighth Circuit noted that Mr. Stafford had offered both circumstantial evidence and expert testimony supporting his theory that NMI's and Dr. Cohen's actions were the proximate cause of Mrs. Stafford's suicide. Mr. Stafford testified that Mrs. Stafford read the form containing the "brain tumor" diagnosis and he recounted in detail the immediate and continuing changes in her behavior that he observed in the intervening period preceding her death. 811 F.2d at 472. Mr. Stafford also presented testimony by a psychiatric expert who opined that when Mrs. Stafford learned of the incorrect diagnosis it caused an impulse control disorder triggering an irresistible impulse to kill herself. *Id.* This evidence was held to make out a submissible case on the issue of proximate cause. *Id.* at 473–74.

■ In contrast, in the instant action for contribution, Plaintiffs did not adduce any evidence of Mrs. Stafford's mental state prior to her suicide. None of the witnesses appearing at trial ever met Mrs. Stafford. Indeed, Plaintiffs did not adduce any evidence that Mrs. Stafford even saw the form containing the "brain tumor" diagnosis. The only witness remotely touching on the issue was the local sheriff who investigated the death. He testified that Mr. Stafford showed him the form, which was "on the corner of the table." There was no evidence of where the table was, who put the form on the table, when they put it there or whether Mrs. Stafford saw it. Mr. Stafford did not testify as to Mrs. Stafford's behavior preceding her death and there was no other evidence of Mrs. Stafford's actions or mental state preceding her suicide. Plaintiffs likewise offered no expert testimony as to the existence of any mental disorder.

In its first point of error, Defendant urges that as an essential component of their action for contribution, Plaintiffs were required to prove that Mrs. Stafford's death was proximately caused by the combined acts of NMI, Dr. Cohen and Defendant. Because Plaintiffs failed to adduce any evidence that Mrs. Stafford's suicide occurred while she was insane, let alone that such insanity was brought about by the actions of Defendant or Plaintiffs, Defendant maintains that Plaintiffs failed to make a submissible case on the issue of proximate cause. Therefore, Defendant claims, the trial court erred in denying its motion for directed verdict at the close of all the evidence and its motion for judgment notwithstanding the verdict. We agree.

In *Safeway Stores, Inc. v. Raytown*, 633 S.W.2d 727 (Mo. banc 1982), the Missouri Supreme Court held that an action for contribution is a separate cause of action from the original wrongful death suit, and the liability of defendant is not predetermined:

> [Contribution defendants] have the right to perform discovery, and to present evidence to refute [contribution plaintiff's] charges including all defenses which would have been available in the original action. In this action they are entitled to a full opportunity to defend against the present allegations of their fault and the amount of damages which the injured party suffered.... Because no determination adverse to the [contribution defendants'] interests is made by the original judgment, their rights to due process are not violated by the lack of notice or opportunity to be heard in the principal action.

*Id.* at 732. Under *Safeway Stores*, no determination as to the proximate cause of Ms. Stafford's death in the initial suit can be used

inimical to Defendant because no determination adverse to its interests was made by the original judgment.

In their brief, Plaintiffs do not contend that sufficient evidence of causation was presented at the trial for contribution to overcome Defendant's motions for directed verdict and JNOV. Rather, they argue, for the first time in this appeal, that under the doctrine of collateral estoppel, Defendant is bound by the finding of causation in the underlying wrongful death action. We disagree.

■ Collateral estoppel is used to preclude litigation of an issue that has already been decided in a different cause of action so as to relieve the parties from the cost and vexation of multiple litigation, to conserve judicial resources, and to encourage reliance on adjudication by avoidance of inconsistent decisions. *Bi–State Dev. Agency v. Whelan Sec. Co.*, 679 S.W.2d 332, 335 (Mo.App.1984). The use of collateral estoppel falls into two categories—defensive and offensive. Defensive collateral estoppel is used by a defendant to estop a plaintiff from asserting a claim that the plaintiff had previously litigated and lost against another defendant. *State ex rel., O'Blennis v. Adolf*, 691 S.W.2d 498, 502 (Mo.App.1985) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 651–652, 58 L.Ed.2d 552 (1979)). Offensive use of collateral estoppel involves a plaintiff seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff.[2] *Id.* In the present case, Plaintiffs ask us to permit what amounts to a modified and previously unrecognized version of offensive collateral estoppel. Plaintiffs seek to estop Defendant from relitigating an issue which *Plaintiffs* previously litigated and lost as defendants in an earlier case. We decline the

invitation. There is good reason why there are no cases applying the doctrine in the manner proposed by Plaintiffs.

■ When considering the appropriateness of applying collateral estoppel in a given case, we consider: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Wendt v. General Accident Ins. Co.*, 895 S.W.2d 210 (Mo.App.1995). Fairness is the overriding consideration. *Id.*

■ We need not discuss the first three considerations because the fourth factor is dispositive under the circumstances presented. Defendant had no opportunity to litigate the issue of its liability to Mr. Stafford, including proximate cause, in the first action. It was not a party to that suit. The question is not, as suggested by Plaintiffs, whether Plaintiffs had as strong an incentive to litigate the issue of causation in *Stafford* as Defendant would have had if it had been a party.[3] Defendant was not a party to the prior suit, and did not have control over that litigation. Causation was hotly contested in the *Stafford* case. After having made their own decisions as to the manner in which they would defend this crucial issue, Plaintiffs now seek to deprive Defendant of the same right. This would squarely violate the holding of *Safeway Stores* and trigger all of the due process concerns the court said would be obviated by requiring the party seeking contribution to prove every element of liability to the plaintiff in a subsequent action for

---

**2.** Courts have traditionally been less inclined to allow offensive use of the doctrine than its defensive use when, as here, mutuality of estoppel is absent. *Id.* This is due in part to the fact that offensive use of the doctrine does not promote judicial economy in the same manner that is promoted by defensive use, and such offensive use may be unfair to a defendant in various ways. *Kayes v. Kayes*, 897 S.W.2d 51 (Mo.App. 1995). Citing similar reasoning, the U.S. Supreme Court has observed that the general rule should be that in cases where a plaintiff could

easily have joined in the earlier action or where the application of offensive estoppel would be unfair to a defendant, its use should not be allowed. *Parklane Hosiery*, supra.

**3.** *Stafford* belies Plaintiffs' assertion that the incentive was the same in any event. Although Plaintiffs did contest the issue of proximate cause, Plaintiffs also sought to shift the blame to General American. *See Stafford*, 811 F.2d at 475. The existence of this fallback position of attempting to place the entirety of the blame on

contribution. *Safeway Stores,* 633 S.W.2d at 732. We hold that Plaintiffs were not entitled to invoke collateral estoppel to establish causation.

Inasmuch as Plaintiffs failed to present any other evidence of proximate cause sufficient to make a submissible case, the trial court erred in denying Defendant's motions for directed verdict and JNOV. Accordingly, we reverse the judgment in favor of Plaintiffs and, pursuant to our authority under Rule 84.14, we enter judgment in favor of Defendant, General American Life Insurance Company. Plaintiff's cross-appeal is dismissed as moot.

CRANDALL and RHODES RUSSELL, JJ., concur.

General American squarely refutes Plaintiffs' argument that their incentive to dispute proximate cause was as strong as General American's

would have been if it had been party to the *Stafford* suit.