**SSM HEALTH CARE ST. LOUIS, Plaintiff/Respondent,**

v.

**RADIOLOGIC IMAGING CONSULTANTS, LLP, et al., Defendants/Appellants.**

**No. ED 82377.**

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 23, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 26, 2004.

James P. Leonard, St. Louis, MO, for appellant.

Timothy J. Gearin, Cynthia A. Sciuto, St. Louis, MO, for respondent.

Harvey M. Tettlebaum, Lowell D. Pearson, Joanne E. Joiner, Missouri Hospital Association, Jefferson City, MO, for Amici Curiae.

LAWRENCE E. MOONEY, Judge.

A hospital, SSM Health Care St. Louis, was found vicariously liable for the actions of Dr. Koch in a medical malpractice case. The hospital now seeks to recover, by way of indemnity from Radiologic Imaging Consultants, L.L.P. and the RIC partners (collectively the radiologists), the amount of damages assessed against the hospital based on the actions of Dr. Koch, who is an RIC partner. The trial court denied the radiologists' motion for summary judgment, and instead, entered summary judgment in favor of the hospital. The ra-

diologists appeal.[1] Because we hold the hospital may not fairly invoke the use of offensive collateral estoppel to establish its claim for indemnity, we reverse and remand.

### Factual and Procedural Background

The hospital's present claim stems from a medical malpractice action brought by Matthew Scott and his mother against St. Louis Health Care Network.[2] We begin by briefly summarizing that underlying action.

### The Scott Lawsuit

Matthew Scott, at the age of seventeen, sustained serious injuries as a result of a sinus infection that spread to his brain. Two days after being treated and released from the hospital's emergency room following a car accident, Matthew returned to the emergency room complaining of a severe headache. At that time, Matthew was examined by Dr. Doumit, the emergency room physician, and underwent a CT scan of his head. The CT scan was read by Dr. Koch, who concluded the scan was normal. Matthew was diagnosed as having a mild concussion and was sent home. Two days later, Matthew collapsed. A spinal tap and CT scan performed at that time revealed an infection of his brain. Matthew underwent numerous surgical procedures, remained in a coma for several weeks, and sustained serious permanent injuries, including a significant degree of paralysis of the right side of his body.[3]

The Scotts[4] sued the hospital, Dr. Koch, RIC, and the RIC partners for negligence. Dr. Koch was employed by, and a partner of RIC, which had contracted with the hospital to provide radiological services at the hospital. In their petition, the Scotts alleged, in part, that Dr. Koch was negligent in the manner in which he rendered medical care and evaluation to Matthew, particularly, that he negligently failed to interpret, diagnose and report an abnormality of Matthew's head as shown on the CT scan, and failed to obtain adequate CT studies. As a direct and proximate result of Dr. Koch's negligence, the Scotts alleged Matthew sustained injuries and damages, and his mother incurred an obligation to pay expenses. For their claims against the hospital, the Scotts alleged the hospital was vicariously liable for the alleged negligent conduct of its employee, Dr. Doumit, as well as for the actions of Dr. Koch, who the Scotts alleged was an agent of the hospital. Before trial, the Scotts settled with Dr. Koch and the other radiologists. The Scotts then dismissed the radiologists and proceeded to trial against the hospital.

---

1. Besides appealing from the trial court's grant of summary judgment in favor of the hospital, the radiologists also appeal from the denial of their motion for summary judgment. Generally, a denial of a motion for summary judgment is an interlocutory order and is not a proper point on appeal. Thus, it need not be addressed. *James v. Paul*, 49 S.W.3d 678, 682 (Mo.2001). In some instances, however, even though the ruling in question might normally be considered interlocutory, if the appeal is otherwise properly before this court and a question of law is almost certain to arise on retrial and has been fully briefed by the parties, we will address the issue as a matter of judicial efficiency and economy. *Id.* Even if that were the case here, the radiol-

ogists' request that summary judgment be granted in their favor is rendered moot given our holding that the hospital's petition fails to state a claim for relief.

2. Specifically, St. Louis Health Care Network, d/b/a/ St. Joseph Health Center, now SSM Health Care St. Louis.

3. For additional background, see *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560 (Mo.App. E.D.2002).

4. Specifically, Matthew's mother, Josephine Scott, sued individually and as conservator of the Estate of Matthew Scott.

The jury returned a verdict for the Scotts and against the hospital, assessing 25% of fault based on the negligence of Dr. Doumit and 75% based on the negligence of Dr. Koch, who the jury found was an agent of the hospital. After trial, the hospital requested, pursuant to section 538.230 RSMo. (2000),[5] that the verdict against it be reduced by the 75% fault apportioned to Dr. Koch's conduct. The trial court denied the hospital's request, finding instead that section 537.060 was the applicable statute, and thus the hospital was liable for the full amount of the damages, reduced only by the amount of the Scotts' settlement with the radiologists.[6] We affirmed. *Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560, 568–9 (Mo.App. E.D.2002). The total monetary judgment against the hospital was $4,945,000.00. Of this amount, $2,068,618.35 is the amount attributable to the actions of Dr. Koch.

*Present Action for Indemnity*

Following trial, the hospital filed a claim against the radiologists pursuant to section 537.060, alleging it was entitled to recover by way of indemnity the total amount of the damages assessed against the hospital based upon the actions of Dr. Koch. In pleading its claim, the hospital made no allegations of Dr. Koch's negligence or of such negligence causing damages to the Scotts, nor did the hospital allege that the radiologists were acting as the agents of the hospital at the time Dr. Koch rendered care and treatment to Matthew Scott; rather, the petition only referenced that such allegations were made in the Scotts' pleadings. The hospital alleged it was entitled to indemnity for the full amount of damages assessed against it based upon the actions of Dr. Koch because the Scotts had obtained a judgment against the hospital, with 75% of that liability based on the apportionment of fault and the determination that Dr. Koch was an agent of the hospital. In arguments supporting its motion for summary judgment, the hospital contended the radiologists were collaterally estopped from relitigating the issues of Dr. Koch's negligence and the adjudged agency.

The radiologists countered with a motion to dismiss, a response to the hospital's motion for summary judgment, as well as their own motion for summary judgment. Following a hearing on all pending motions, the court denied the radiologists' motion to dismiss, denied their motion for summary judgment, and granted summary judgment in favor of the hospital and against the radiologists, in the amount of $2,068,618.35, plus interest. The radiologists now appeal.

---

**5.** All further statutory references are to RSMo. (2000).

**6.** Section 537.060 provides:

"Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, ... is given in good faith to one of two or more persons liable in tort for the same injury ... such agreement shall not discharge any of the other tortfeasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tortfeasor to whom it is given from all liability for contribution or non-contractual indemnity to any other tortfeasor. The term 'non-contractual indemnity' as used in this section refers to indemnity between joint tortfeasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability."

## Discussion

■ First we shall examine the nature and viability of the hospital's claim. The radiologists contend they and the hospital are joint tortfeasors and stand in *pari delicto,* and thus, indemnity is not an allowable remedy in this case. Rather, the radiologists contend the hospital's claim is really one for contribution, which, the radiologists argue, would be barred by section 537.060 due to their settlement with the Scotts. The radiologists further argue that regardless of how the hospital's claim is characterized, it is barred by section 538.230.

■ Contribution and indemnity are separate and distinct concepts. *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727, 729 n. 3 (Mo.1982); *see generally* 18 Am Jur 2d, Contribution § 2; 18 C.J.S. Contribution § 2. Contribution distributes the loss among the tortfeasors by requiring each to pay his proportionate share. *Safeway Stores,* 633 S.W.2d at 727 n. 3. It is the right of one who has discharged a common liability or burden to recover of another, also liable, the portion he ought to pay or bear. *See generally* 18 Am Jur 2d, Contribution § 1; 18 C.J.S. Contribution § 2; *see also Rowland v. Skaggs Companies, Inc.,* 666 S.W.2d 770, 773 (Mo.1984). The two primary requisites of the right to contribution are that first, the party seeking contribution and the party from whom it is being sought share a common liability or burden, and second, that the party seeking contribution has discharged more than his fair share of that common liability or burden. *See generally* 18 C.J.S. Contribution § 5; 18 Am Jur 2d, Contribution § 9; *see also McNeill Trucking Co., Inc. v. Missouri State Highway and Transp. Com'n,* 35 S.W.3d 846, 847 (Mo.2001)(joint liability is a prerequisite to contribution); *Commercial Union Ins. Co. of New York v. Farmers Mut.* *Fire Ins. Co. of St. Louis County,* 457 S.W.2d 224, 226 (Mo.App.1970); *Automobile Club Inter–Insurance Exchange, By and Through Club Exchange Corp. v. Farmers Ins. Co., Inc.,* 646 S.W.2d 838, 840 (Mo.App. E.D.1982)(common liability required). The right to contribution "serves to rectify the unjust enrichment that occurs when one tortfeasor 'discharges a burden which both in law and conscience was equally the liability of another.'" *Rowland,* 666 S.W.2d at 773 *quoting* Lefar, "Contribution and Indemnity Between Tortfeasors," 81 U.Pa.L.Rev. 130, 138 (1932).

■ Indemnity, on the other hand, is the shifting of responsibility from the shoulders of one person to another. *Safeway Stores,* 633 S.W.2d at 727 n. 3; *see generally* W. Keeton, Prosser and Keeton on The Law of Torts, § 51 (5th edition, 1984). Indemnity is a right that inures to the person who has discharged a duty that is owed by him, but which, as between himself and another, should have been discharged by the other, so that if the other does not reimburse the person, the other is unjustly enriched to extent that his liability has been discharged. *Koeller By and Through Koeller v. Unival, Inc.,* 906 S.W.2d 744, 746 (Mo.App. E.D.1995); 42 C.J.S. Indemnity § 2; 41 Am Jur 2d, Indemnity § 1. This right of indemnity is based on the principle that every one is responsible for the consequences of his own wrongdoing, and if another person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him. 42 C.J.S. Indemnity § 3; 41 Am Jur 2d, Indemnity § 2.

■ As a general rule, indemnification is allowed in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer. *Campbell v. Preston,* 379 S.W.2d

557, 559 (Mo.1964); *McDonnell Aircraft Corp. v. Hartman–Hanks–Walsh Painting Co.*, 323 S.W.2d 788, 793 (Mo.1959). In contrast, when joint tortfeasors are in *pari delicto*—when each is chargeable with active or affirmative negligence contributing to the injury for which recovery was had—neither is entitled to indemnity from the other. *Lewis v. Amchem Products, Inc.*, 510 S.W.2d 46, 48 (Mo.App.1974); *see also Feinstein v. Edward Livingston & Sons, Inc.*, 457 S.W.2d 789, 792 (Mo.1970). But, when a person, who without any fault on his part is exposed to liability and compelled to pay damages on account of the negligence of another, that person has a right of action against the active tortfeasor on the theory of an implied contract of indemnity. *Campbell*, 379 S.W.2d at 559 *citing* 42 C.J.S. Indemnity § 21; *see also Feinstein*, 457 S.W.2d at 792.

In this case, the radiologists contend that they and the hospital are joint tortfeasors and stand in *pari delicto*. The radiologists argue the hospital's action is really one for contribution, and that because they are joint tortfeasors, the hospital is not entitled to indemnity. The radiologists are correct in their assertion that if they and the hospital were joint tortfeasors and in *pari delicto*, then the hospital would not be entitled to indemnity. However, that is not the case here. Here, the hospital and the radiologists could not have been joint tortfeasors. The hospital was liable not because of any active or affirmative negligence or because of any omission of its own. Rather, the hospital was held responsible in the *Scott* case only by way of vicarious liability. Further, the radiologists have not directed us to any comparable case where a principal, held responsible only by virtue of vicarious liability for an employee and an agent, is then held to be a joint tortfeasor with that agent, nor has our research revealed any such case.

The hospital was found vicariously liable for the actions of both Dr. Doumit and Dr. Koch. The hospital was held responsible solely by imputation of law because of its relation with the actual wrongdoers—one its employee, the other its agent. It has long been recognized that where an agent, acting within scope of his employment, subjects his principal to liability because of a negligent or other wrongful act, the agent is liable to principal for the loss which results therefrom. *See, e.g., State ex rel. Algiere v. Russell*, 359 Mo. 800, 223 S.W.2d 481, 483 (1949); *see also, Elzea v. Hammack*, 241 Mo.App. 1070, 244 S.W.2d 594, 603 (1951); *see generally* 42 C.J.S. Indemnity § 32; 41 Am Jur 2d, Indemnity § 30. The hospital, without any fault of its own, was exposed to liability and compelled to pay damages on account of Dr. Koch's conduct. Accordingly, the hospital has a right of action for indemnity against the radiologists. Further, while the hospital is seeking to recover only a portion of the entire amount of damages assessed against it, as between the hospital and the radiologists, the hospital seeks reimbursement of the entire amount of damages assessed against it based on Dr. Koch's negligence. The hospital is seeking to shift the entire loss attributable to Dr. Koch from its shoulders to the shoulders of the radiologists. The hospital's action is one for indemnity.

■ On appeal, the radiologists argue that, regardless of the characterization of the hospital's claim, it is barred by section 538.230(3),[7] which discharged them from

---

7. Section 538.230(3) provides, in pertinent part:

"Any release, ... or similar agreement entered into by a claimant and a person or entity against which a claim is asserted arising out of the alleged transaction which is the basis for plaintiff's cause of action, whether actually made a party to the action or not,

"all liability for contribution or indemnity" when they settled with the Scotts. Despite extensive briefing by the parties and various *amici curiae*, we decline to reach this issue because it was not adequately raised by the pleadings.[8] We shall not convict the trial court of error when it is unclear whether the issue was unequivocally brought to the attention of the trial court.[9] *See, e.g., Barner v. The Missouri Gaming Co.,* 48 S.W.3d 46, 50 (Mo.App. W.D.2001). Furthermore, given our disposition of this appeal on grounds involving the adequacy of the hospital's petition, it would be premature for us to decide this issue.

As discussed, the hospital has a right of action against the radiologists for indemnity. But here, the hospital's claim for indemnity is premised entirely on the use of collateral estoppel. In pleading its claim, the hospital made no allegations of Dr. Koch's negligence or of such negligence causing damages to the Scott, nor did the hospital allege that the radiologists were acting as the agents of the hospital at the time Dr. Koch rendered care and treatment to Matthew Scott; rather, the hospital's petition only referenced that such allegations were made in the Scotts' pleadings. The hospital alleged that, based upon the Scott judgment, Dr. Koch was found to be an agent of the hospital when he rendered care and treatment to Matthew Scott and his conduct was found to be negligent and to have proximately caused the Scotts' injuries. The hospital now contends the radiologists are collaterally estopped from relitigating these issues. To the contrary; we hold the hospital is not entitled to invoke the offensive use of collateral estoppel in order to establish its claim for indemnity.

Collateral estoppel, or issue preclusion, is used to preclude the relitigation of an issue that has already been decided in a different cause of action. *Neurological Medicine, Inc. v. General American Life Ins. Co.,* 921 S.W.2d 64, 68 (Mo.App. E.D.1996). There is both the defensive and offensive use of collateral estoppel. Defensive collateral estoppel involves a defendant invoking the doctrine to estop a plaintiff from relitigating a fact that the plaintiff had previously litigated and lost against another defendant. *See James v. Paul,* 49 S.W.3d 678, 685 (Mo. 2001); *Neurological Medicine,* 921 S.W.2d at 68. Offensive collateral estoppel involves a plaintiff seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99

---

discharges that person or entity from all liability for contribution or indemnity but it does not discharge other persons or entities liable upon such claim unless it so provides."

8. The radiologists never filed an answer to the hospital's petition, and thus never pleaded that section 538.230 might operate as an affirmative defense. Nor did the hospital raise this question by way of motion. *See generally Heins Implement Co. v. Missouri Highway & Transp. Com'n,* 859 S.W.2d 681, 685 (Mo. 1993); Rule 55.08; Rule 55.27(f). Instead, the radiologists first raised the applicability of this section in their memorandum of law filed in support of *their* motion for summary judgment, wherein the radiologists set forth a single sentence stating "[t]o the extent that Plaintiff's claim can be considered as one for contribution rather than indemnity, it is clear that such claims are barred by both section 538.230 and 537.060, whichever might be applicable." The radiologists next raised the applicability of section 538.230 in its motion for reconsideration of the trial court's judgment. Thus, the radiologists never interposed section 538.230 as an affirmative defense by way of answer, motion, or in any response to the hospital's motion for summary judgment.

9. There is no record of the arguments made before the trial court on the parties' respective motions.

S.Ct. 645, 58 L.Ed.2d 552 (1979); *Neurological Medicine,* 921 S.W.2d at 68. In both the offensive and defensive use of collateral estoppel, the party against whom estoppel is asserted has litigated and lost in an earlier action. *Parklane Hosiery,* 439 U.S. at 329, 99 S.Ct. 645. In the present case, the hospital seeks to employ an unprecedented extension of offensive collateral estoppel. The hospital, as a plaintiff, seeks to estop the defendant radiologists from relitigating issues which the *hospital previously litigated and lost* as defendants in the *Scott* case. Rather than requiring a litigant to be bound by the results of its own unsuccessful prior litigation of an issue, here the hospital would seek to bind the defendant radiologists to the adverse result the hospital itself obtained in the earlier litigation. We note there are no cited Missouri cases which have allowed a plaintiff to use offensive collateral estoppel where he was previously a defendant, and indeed, such use has been questioned. *See Neurological Medicine,* 921 S.W.2d at 68–9.

■ Even if such an extension of offensive collateral estoppel were available, we must assess its fairness. When deciding whether the application of collateral estoppel is appropriate in a given case, we consider the following four factors: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity in the prior adjudication to litigate the issue for which collateral estoppel is asserted. *Neurological Medicine,* 921 S.W.2d at 68; *In re Carey,* 89 S.W.3d 477, 498 (Mo.2002).

Fairness is the overriding consideration. *Neurological Medicine,* 921 S.W.2d at 68; *James,* 49 S.W.3d at 688; *Wilkes v. St. Paul Fire and Marine Ins. Co.,* 92 S.W.3d 116, 120 (Mo.App. E.D.2002). As noted in *Parklane,* where the application would be unfair to a defendant, the court should not allow the use of offensive collateral estoppel. *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. 645; *see also State v. Daniels,* 789 S.W.2d 243, 244–5 (Mo.App. W.D.1990); *Wilkes,* 92 S.W.3d at 120 (collateral estoppel will not be applied where to do so would be inequitable).

In the present case, it would be simply unfair to the radiologists to allow the use of offensive collateral estoppel in the manner proposed by the hospital. In the *Scott* case, the hospital defended its own employee, while at the same time defending against claims that Dr. Koch, the radiologist, was an agent of the hospital and likewise negligent in his conduct. Inherent in the posture of this defense is the incentive for fault-shifting. As the radiologists argue, the hospital's interest would be best served by minimizing the percentage of fault apportioned to its employee and maximizing the percentage of fault apportioned to Dr. Koch. The hospital contends it had an identical interest in disproving the facts and theories of liability alleged by the Scotts, and contends it vigorously defended against the Scotts' claims. The radiologists dispute these contentions. We note the *Scott* trial transcript is not a part of the summary-judgment record. Nevertheless, under the circumstances of this case, the potential and incentive for fault-shifting existed. This is because the hospital may have the incentive to shift some of the fault apportioned to its own employee, Dr. Doumit, to the radiologist, Dr. Koch. The hospital would be loathe to file any claim for indemnity against its own employee; however, the hospital might entertain no such compunction as to a suit against its adjudged

agents, the radiologists. Thus, while defending against the imposition of any vicarious liability, the hospital might allow the development of evidence to subtly shift fault that might be attributed to its own employee to instead be attributed to its agent. The Missouri Supreme Court found in *Oates* that it would be inequitable to apply collateral estoppel in circumstances where there was a conflict of interest between the parties. *Oates v. Safeco Ins. Co.*, 583 S.W.2d 713 (Mo.1979). Here too, with an inherent conflict of interest between the hospital and the radiologists, it would be inequitable to apply collateral estoppel to bar the radiologists from contesting the respective allocation of fault. We hold the hospital is not entitled to invoke collateral estoppel to establish the apportionment of fault in its claim for indemnity.

We are unpersuaded by the hospital's argument that the radiologists are bound because they participated in the discovery process in the *Scott* litigation. The radiologists settled with the Scotts and were dismissed prior to trial in the underlying action. The radiologists were not present at trial; they did not have a full and fair opportunity in the prior adjudication to litigate the negligence, causation, allocation of fault, and agency issues. The radiologists are entitled to a full opportunity to contest these issues.

Because the hospital's claim for indemnity, as pleaded and presented, was premised entirely on the offensive use of collateral estoppel to establish negligence, causation, allocation of fault, and agency,

a use we hold to be unprecedented and unfair under the circumstances of this case, we reverse the judgment of the trial court and remand the cause.[10] Further, because the hospital's petition therefore presently fails to state a claim upon which relief can be granted, we instruct the trial court to dismiss the petition. However, because we also hold the hospital may be able to replead a legally sufficient claim for indemnity, we instruct the trial court to grant the hospital leave to amend its petition within such time as the court shall specify. *See* Rule 67.06.

The judgment is reversed and the cause is remanded with instructions.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.

**10.** We are mindful that our decision remanding this cause could be viewed as contrary to the underlying purposes of collateral estoppel of relieving litigants from the cost and vexation of multiple litigations and of conserving judicial resources. *See Neurological Medicine*, 921 S.W.2d at 68. But the hospital could have used third-party practice and filed a cross-claim for indemnity against the radiol-

ogists as third-party defendants in the *Scott* litigation. Likewise, the question of whether section 538.230 operates as a bar to the hospital's cross-claim for indemnity could have been put at issue by way of answer or motion by the third-party defendant radiologists. *See generally Heins Implement Co. v. Missouri Highway & Transp. Com'n*, 859 S.W.2d 681, 685 (Mo.1993).